No. 81-343

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

CARL PIERCE,

Defendant and Appellant.

Appeal from:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

A. Michael Salvagni, Bozeman, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Donald E. White, County Attorney, Bozeman, Montana

Submitted on briefs: November 18, 1981

Decided: July 7, 1982

Filed: JUL 7 - 1982

_Thomas J. Kearney_
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

On May 13, 1981, a jury for the Eighteenth Judicial District Court, Gallatin County, found Carl Pierce guilty of one count of aggravated assault, a felony, and one count of misdemeanor assault. Pierce had previously pled guilty to another misdemeanor, failure to stop at the scene of an accident. The court issued a sentence and judgment June 8, 1981, sentencing defendant to: twenty years on one count of aggravated assault; one year to run concurrently, on failure to stop; and six months, to run consecutively, for misdemeanor assault. Defendant appeals. We affirm.

At approximately 2:00 P.M., March 7, 1981, defendant Carl Pierce left Dillon, Montana, and drove toward Gallatin Gateway to visit his wife. His nephew and a hitchhiker accompanied defendant as far as Bozeman. Defendant then proceeded alone, west on U. S. Highway 191, until becoming involved in a serious accident around 6:15 P.M. He abandoned his car and fled the scene of the accident.

Defendant was later apprehended in Country Lanes Bowling Alley and arrested for leaving the scene of an accident. He was taken to the Bozeman police station, where he agreed to submit to a breathalyzer test. The results of the test indicated that defendant's blood alcohol level was .16 percent. In Montana, an individual whose blood alcohol level is greater than .10 percent is presumed to be under the influence of alcohol in a criminal prosecution for driving under the influence of alcohol. See section 61-8-401(3)(c), MCA.

Defendant pled guilty March 9, 1981, in Gallatin County Justice Court, to driving under the influence of alcohol.

-1-

On March 11, 1981, defendant participated in a taped interview with an investigator from the Gallatin County Attorney's Office, during which defendant discussed his activities the day of the accident. An information was then filed March 13, 1981, charging defendant with the following:

COUNT I: AGGRAVATED ASSAULT, a felony, for knowingly causing serious bodily injury to Jeri Lyn Francisco, in violation of section 45-5-202(1)(a), MCA;

COUNT II: AGGRAVATED ASSAULT, a felony, for knowingly causing bodily injuries to the other passengers with a weapon, in violation of section 45-5-202(1)(b), MCA; and

COUNT III: FAILURE TO STOP AT THE SCENE OF AN ACCIDENT, a misdemeanor, in violation of section 61-7-103, MCA.

Defendant pled guilty to Count III and proceeded to trial on Counts I and II. At trial, several individuals testified that as they were travelling west on U. S. Highway 191 around 6:00 P.M., March 7, 1981, an older green car passed them on the right shoulder of the road, travelling at a high rate of speed. The car defendant was driving, and which was abandoned at the scene of the accident, was a green 1968 Mercury.

According to witnesses, the driver of the older green car attempted to similarly pass a 1979 Toyota pickup truck. The pickup was occupied by Shirley Francisco and four children. Mrs. Francisco and two of the children sitting in the back of the enclosed pickup testified that they saw the green car rapidly approach the rear of their pickup while on the right shoulder of the road and then felt the impact of the crash. All five passengers were thrown from the vehicle. Mrs. Francisco suffered a fractured right shoulder and a compound fracture of her left ankle. Kevin Schmidt, the other passenger

in the cab of the pickup, received lacerations on his back and was dazed. The three girls sitting in the bed of the enclosed pickup were also injured. Rochelle Francisco was hospitalized for chest pains and dizziness, while Brenda Schmidt was hospitalized for back and neck pain.

Jeri Lyn Francisco suffered the most serious injuries. She was flown to Billings for emergency surgery to remove broken skull fragments from the back of her head and to stop the bleeding of lacerated brain tissue. Attending physicians testified that prior to completion of the surgery on Jeri Lyn, they had believed she was in serious danger of losing her life.

The investigating police officers testified that by conducting a vehicle license check, they learned that the owner of the Mercury automobile was Virginia Pierce. When Mrs. Pierce was contacted, she told the police that her husband, Carl Pierce, had been in possession of the car for approximately one month. Mrs. Pierce later contacted Bozeman police and told them her husband had called and requested she pick him up at the Country Lanes Bowling Alley. Two officers proceeded to the bowling alley, found defendant sipping his first drink at the bar, questioned him and arrested him for failure to stop at the scene of an accident.

The officers testified that Mr. Pierce initially denied being involved in the accident. Mr. Pierce told the officers that he had left his car in Sheridan, Montana, and had hitch-hiked to Bozeman. He later admitted to being the driver of the 1968 Mercury at the time of the accident.

During the taped interview, Pierce admitted that he was intoxicated at the time of the accident and stated that he probably should not have been driving. He had consumed twelve beers between noon and the time of the accident.

He also stated that he did not recall passing any vehicle on the right shoulder of U. S. Highway 191. Defendant's version of the accident was that the brake lights of the Toyota came on as he was properly passing it, causing him to apply the brakes of his car and slide into the Toyota. He then fled the scene of the accident out of fear.

At the close of the trial, the jury found defendant guilty of aggravated assault for knowingly causing serious bodily injuries to Jeri Lyn Francisco and guilty of misdemeanor assault for negligently causing bodily injuries with a weapon to the others in the car. In his appeal of those convictions, defendant presents three issues to this Court:

(1) Whether defendant's constitutional right against being placed in double jeopardy was violated when, as a result of the same transaction, defendant pled guilty in justice court to driving under the influence of alcohol and was later charged in District Court with aggravated assault?

(2) Whether there was sufficient evidence to prove defendant knowingly caused serious bodily injury to Jeri Lyn Francisco, so as to constitute an aggravated assault?

(3) Whether the convictions should be overturned as requiring two mutually exclusive mental states to exist simultaneously?

Both before and during trial, defendant made motions to dismiss the aggravated assault charges against him. He alleged that a charge of aggravated assault would violate his constitutional right against being placed in double jeopardy as he had already pled guilty to another charge arising from the same accident, driving under the influence of alcohol. We disagree with defendant's contention.

The applicable codification of defendant's constitutional

right against being placed in double jeopardy is found in section 46-11-504(1):

> "46-11-504. _Former prosecution in another jurisdiction -- when a bar_. When conduct constitutes an offense within the concurrent jurisdiction of this state and of the United States or another state or of two courts of separate, overlapping, or concurrent jurisdiction in this state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this state under the following circumstances:
>
> "(1) The first prosecution resulted in an acquittal or in a conviction as defined in 46-11-503 and the subsequent prosecution is based on an offense arising out of the same transaction."

Section 46-11-503(3)(c) defines conviction as including "a plea of guilty accepted by the court. . ." Therefore, section 46-11-504 may apply to defendant as his guilty plea is considered a conviction for purposes of that statute.

The prohibition against double jeopardy was construed by the United States Supreme Court in Blockburger v. U. S. (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306: "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 384 U. S. at 304.

Driving under the influence of alcohol, §61-8-401(1)(a), MCA, requires proof that the individual was under the influence of alcohol and proof that he was driving or in control of a vehicle while under the influence. Aggravated Assault, §45-5-202(1)(a), MCA, requires proof defendant knowingly caused serious bodily injury. Assault, §45-5-201(1)(b), MCA, requires proof defendant negligently induced injury with a weapon.

Driving under the influence does not require proof of bodily injury. Assault does not require proof of intoxication. Each offense requires proof which the other does not. We therefore find no violation of defendant's constitutional right against being placed in double jeopardy.

As his second contention, defendant asserts that there was insufficient evidence presented at trial on which a jury could base a determination that defendant knowingly caused serious bodily injury to Jeri Lyn Francisco. "Knowingly" is defined in part as follows:

> ". . . A person acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result will be caused by his conduct. . ." Section 45-2-101 (33), MCA.

A jury may use circumstantial evidence to determine the existence of a particular mental state. State v. Pascgo (1977), 173 Mont. 121, 126, 566 P.2d 802, 805. That is, they may infer the mental state from what the defendant does and says and from all the facts and circumstances involved. State v. Jackson (1979), 180 Mont. 195, 589 P.2d 1009. Flight by the defendant may be considered by the jury as a circumstance tending to prove consciousness of guilt. State v. Gone (1978), 179 Mont. 271, 277, 587 P.2d 1291, 1295.

During his interview with the investigator from the County Attorney's Office, defendant admitted that he had consumed twelve beers, that he was intoxicated, and that he probably should not have been driving when the accident occurred. He also admitted fleeing the scene of the accident because of fear. Witnesses described defendant's high rate of speed and illegal passing maneuvers. These facts support the jury's determination that defendant knew there was a high probability that driving while under the influence of

alcohol would cause serious bodily injury to another.

Defendant's third contention is that the two verdicts are inconsistent in that they require mutually exclusive mental states to exist simultaneously. Although they arose from the same accident, one charge alleged defendant knowingly caused serious bodily injury to another while the second alleged defendant knowingly caused bodily injury to others with a weapon. The jury found defendant knowingly caused serious bodily injury to one victim, but as to the less seriously injured victims, the jury found defendant acted negligently and therefore convicted defendant of misdemeanor assault under §45-5-201(1)(b), MCA. However, we do not agree with defendant that the two mental states are mutually exclusive.

The aggravated assault conviction requires a mental state of "knowingly." The assault conviction requires a mental state of "negligently." They are not mutually exclusive mental states.

"Negligently" is defined in relevant part as follows:

> ". . . a person acts negligently with respect to a result or to a circumstance described by a statute defining an offense when he consciously disregards a risk that the result will occur or that the circumstance exists or when he disregards a risk of which he should be aware that the result will occur or that the circumstance exists. The risk must be of such a nature and degree that to disregard it involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. 'Gross deviation' means a deviation that is considerably greater than lack of ordinary care. . ." Section 45-2-101 (37), MCA. (Emphasis supplied.)

The jury was so instructed.

The jury, in finding the knowledge required for aggravated assault, found that defendant was aware of the high probability that serious bodily injury would occur if he drove while

-7-

under the influence of alcohol. Thus, defendant violated §45-5-202(1)(a), MCA. It was not inconsistent for the jury to also find that defendant disregarded the risk that bodily injury would occur and thus found defendant guilty of criminal negligence, in violation of §45-5-201(1)(b), MCA. Aggravated assault requires a knowledge which is aware and therefore under-stands that a certain result is likely to follow. Misdemeanor assault, in its negligent form, requires only an indifference to result.

The mental state required to satisfy "knowledge" is more culpable than that for "criminal negligence" because the actor must know it probable that a result will follow. "Criminal negligence" can be shown if risk to others is disregarded. However, proof of knowledge necessarily proves the elements of criminal negligence. You cannot engage in conduct knowing it likely will harm others without, at the same time, disregarding the risk to those others. The mental states are therefore not mutually exclusive.

The judgment of the District Court is affirmed in its entirety.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

Justices Daly and Shea dissent and their written dissent will be filed later.

No. 81-343

STATE V. PIERCE

Dissent of Mr. Justice Daniel J. Shea and concurrence
by Justice Gene B. Daly

Dated:  October 1, 1982

OCT 1 1982

OCT 1 1982

PART I.  INTRODUCTION.

By affirming the assault convictions, the majority have tortured and mutilated the assault statutes; they have construed the essential mental state "knowingly" (which should be "purposely or knowingly") so that it means nothing more than conduct amounting to criminal negligence; they have ignored the jury instructions which defined "knowingly" in four ways; they have ignored fundamental appellate rules designed to assure the reliability and integrity of the trial process; they have ignored the fundamental rule which requires the court to instruct on a lesser-included offense; they have ignored the effect of the jury acquittal on the count II charge of aggravated assault where the jury found that defendant did not "knowingly" commit the act charged; they have failed to consider whether defendant was properly charged with assault "with a weapon" and whether he was properly convicted of negligent assault "with a weapon;" and finally, they have failed to consider the illegality of the trial court's sentence.  This adds up to a manifest miscarriage of justice.

Although most of these issues were not raised by defense counsel, we nonetheless have a duty to discuss and decide these issues under the plain error doctrine.  By failing to do so we have become an accomplice to the grievous errors committed in this case.

The assault statutes, in their present form, were not intended to apply to a drunken and reckless driving case which results in a collision and injuries to occupants of the other vehicle.  However drunken and reckless the defendant's driving, the assault statutes were not intended to cover this kind of case.  Ironically, had one or more of the occupants of the

other vehicle been killed rather than injured, defendant would have been charged with negligent homicide, and, upon a conviction, would have been subject to a maximum 10 year prison sentence. But because the State has gotten away with charging him with aggravated assault, defendant has had a 20 year sentence imposed for the count I conviction. The 6 month consecutive prison sentence for the conviction on count II of the lesser-included negligent assault "with a weapon" has only added to the illegality of the entire proceedings.

I have no doubt that the legislature can create a crime to punish by a severe prison sentence those who by their criminal negligence (drunken and reckless driving in this case) abuse their driving privileges and injure or maim other users of the highway. A criminal negligence statute to that effect would be upheld just as it is now permissible to file a negligent homicide charge against a person who recklessly causes an accident which kills another person. But, as stated by the Arizona Supreme Court in State v. Balderrama (1964), 97 Ariz. 134, 397 P.2d 632, "criminal neglect can supply the place of the intent only where the legislative power has expressly so provided." The legislature has failed to enact this legislation in this state, and the defendant cannot be held responsible for that.

PART II.  SUMMARY OF ISSUES REQUIRING THAT BOTH ASSAULT
CONVICTIONS BE REVERSED AND THE CHARGES ORDERED DISMISSED.

Aside from the issues raised by defendant (and both
the defendant's and the State's briefs are woefully inadequate),
serious errors exist which require an appellate court to
consider and decide issues not raised.  This Court has the
right and here the duty to consider and decide these issues
even though they were neither raised in trial court nor on
appeal.  See Kudrna v. Comet Corporation (1977), 175 Mont.
29, 51, 57 P.2d 183, 195; Halldorson v. Halldorson (1977), 175
Mont. 170, 173-174, 573 P.2d 169, 172.  The plain error rule
applies to evidentiary rulings as well as to pure matters of
law.  See Rule 103(d), Mont.R.Evid.  I can think of no case
since I have been on this Court that is more riddled with
error not raised by counsel and is therefore deserving of an
application of the plain error rule.  It is especially compelling
that we invoke that rule in this case because this is the first
time that the assault statutes have been used to prosecute a
drunk driving collision case which has resulted in injuries to
other users of the highway.  To hide our head in the sand here
only compounds the injustice perpetrated on the defendant in
the name of justice.

On Several Grounds the Count I Conviction of Aggravated Assault
Must be Reversed and the Charge Ordered Dismissed:

It is true, as defense counsel contends, that the State
failed to prove in count I that defendant "knowingly" committed
the act charged--that is, the State failed to prove that
defendant "knowingly" drove his car into the Francisco pickup.
Beyond this issue, however, several grounds exist which require
reversal of this conviction.

First, the majority has failed to consider whether the
State could legally charge only that defendant "knowingly"

committed the assault. The assault statute sets forth the mental state to be proved as "purposely or knowingly." Further, the majority has failed to discuss the mental state "knowingly" or "purposely or knowingly" in its relation to the statutory tests for causation--which must be met. The majority has ignored the statutory scheme setting forth the tests of causation in relation to the mental state which must be proved. This statutory scheme leads to the inescapable conclusion that causation was not proved and that the collision in this case, because of the facts, was not designed to fall within the clutches of the assault statutes. See part IIIA and B of this dissent.

Second, the majority has chosen one definition of "knowingly" of four given to the jury, but even in analyzing the evidence giving so-called life and meaning to this definition, they have landed short and wide of the mark. In concluding that defendant "knowingly" acted, the majority have astoundingly relied on defendant's intoxication, on defendant's flight after the collision, and on defendant's high speed and illegal passing maneuvers just before the collision. The majority has taken giant strides backwards in concluding that this evidence proved that defendant "knowingly" drove his car into the Francisco pickup. See part IV of this dissent.

Third, the majority opinion leaves the impression that the only definition or theory of "knowingly" given to the jury was that definition discussed in the majority opinion. In fact a total of four definitions of "knowingly" were given to the jury (instruction no. 10), and only a clairvoyant court could determine which definition the jury applied in reaching its verdict. Because most appellate courts recognize they are not endowed with such powers, they have adopted basic,

-12-

axiomatic rules of appellate review to review convictions. These rules are designed to assure the reliability and integrity of the trial and fact-finding process. The majority have once again ignored these rules in their rush to affirm the count I aggravated assault conviction.

In order to uphold the verdict, each of the theories of "knowingly" given to the jury must have been proper in this case and each of the theories must have been supported by substantial evidence. If both of these requirements were not met, a reversal is required unless it can be stated beyond a reasonable doubt that the jury relied only on the definition chosen by the majority to uphold the conviction. No conscientious appellate court can make that declaration, however, and the judgment must be reversed because the jury may have relied on an erroneous theory of "knowingly" in reaching its verdict. See part V of this dissent.

Fourth, the evidence required that the trial court give a lesser-included assault instruction for count I, and the failure to give such instruction was reversible error. See part VI of this dissent.

Fifth, in ruling that the count I aggravated assault conviction is not inconsistent with the count II lesser-included negligent assault "with a weapon" conviction, the majority have ignored the vital fact that the jury found defendant not guilty of count II aggravated assault, and in doing so, found that he did not "knowingly" commit the act charged. Counts I and II arose out of the same act and necessarily the same mental state accompanied that act. The conviction of count I aggravated assault, including a determination that defendant "knowingly" committed the act charged, flies in the face of the count II acquittal which found that

defendant did not "knowingly" commit the act charged. Logic and fairness require that the count I aggravated assault conviction be reversed. See part VII of this dissent.

## The Count II Lesser-Included Negligent Assault "With a Weapon" Conviction Must Also Be Reversed:

Although the jury acquitted defendant of count II aggravated assault "with a weapon," I nonetheless discuss this charge because defendant should never have been charged with this offense and because the State will undoubtedly now be using this provision to charge assault in similar cases--a charge totally unjustified. See part VIIIA, B, C, and D, of this dissent.

In addition, although defense counsel failed to raise any issue with relation to the negligent assault "with a weapon" conviction, the conviction must nonetheless be reversed for it is not supportable under the law or facts.

First, section 45-2-103(1)(2), MCA, requires that the State prove defendant negligently caused the injuries and to prove that he negligently used a weapon. The jury was not so instructed and for this reason alone the conviction must be reversed. If this were the only error, perhaps a new trial would be the proper result.

Second, I find it difficult to understand how a defendant can be held responsible for using a weapon, the gist of the crime, if it is not proved he was aware he was possessing a weapon. The jury was not instructed on this requirement, and, furthermore, no evidence exists to support such requirement. The only evidence in the case is that defendant was drunk and recklessly driving his car, and as a result caused the collision which resulted in the injuries to the occupants of the Francisco pickup.

-14-

Third, because of the statutory definition of "weapon," no item can be held to be a "weapon" as a matter of law. Whether an item was used as a weapon is proved by how it was used, that is, intentional use. Because defendant did not intentionally ram his car into the back of the Francisco pickup it was not proved that he used his car as a weapon.

See part VIIIA, B, C, and E of this dissent.

The consecutive sentence imposed is illegal:

Defendant was given consecutive sentences: 20 years for the aggravated assault conviction, and 6 months in prison for the misdemeanor assault conviction, to be served after serving the 20 year sentence. The trial court had no authority to impose the 6 months prison sentence on the misdemeanor charge for the law does not permit a judge to sentence a defendant to prison for a misdemeanor conviction.

Further, under the single transaction theory of double jeopardy--here one act was committed and necessarily one mental state accompanied that act--defendant has been given two sentences. If he intentionally caused the injuries to the occupants of the Francisco pickup, it is possible that consecutive sentences would not offend the double jeopardy provisions. However, where he was at most criminally negligent, the trial court violated the spirit of the double jeopardy provisions of our constitutions by imposing consecutive sentences. This one act, being only a negligent act rather than an intentional act, should not be twice punished.

See part IX of this dissent.

PART III.  THE STATUTORY MENTAL STATES REQUIRED FOR PROOF
OF A CRIME HAVE BEEN UNDETERMINED, AND THE TEST FOR
CAUSATION HAS BEEN IGNORED.

In upholding the conviction by its interpretion of
the mental state "knowingly," the majority has taken a
giant step in undermining the tests to prove an essential
element of a crime.  And, in ignoring the tests for causation
which must necessarily be applied in determining whether
defendant "knowingly" committed the act charged, the majority
has rendered meaningless any requirement that the State prove
that the act of causation was accompanied by the mental state
set forth as an essential element of the crime.  Whether the
charge be that the defendant "purposely or knowingly" acted,
or that the defendant "knowingly" acted, the test now is
simply whether, in bringing about the result, the defendant
was criminally negligent.

A.  The "Purposely or Knowingly" Mental State

Since the enactment of the 1973 Criminal Code (effective
in January 1974), this state has had three terms which set
forth the mental state required for the commission of a
crime.  Most of the statutes require that the state prove
the defendant "purposely or knowingly" committed the act.
(Emphasis added.) Some statutes require only that the defendant
"negligently" commit the act.  The term "negligently,"
however, is actually defined in terms of a grossly negligent
act.  Negligent homicide is the best example.

The misuse of the term "purposely or knowingly" has now
arrived at a point where it has ceased to have any substantial
meaning.  In fact, defendant has been convicted of "knowingly"
committing an assault where the proof amounts to no more
than gross negligence as that term is defined. The consequences

-16-

are great. If the State can allege in any felony charge, including homicide, only that the defendant "knowingly" committed the act, it means that one can be convicted of deliberate homicide by proof that amounts to no more than a showing that defendant was grossly negligent.

The assault statutes involved in this case require that the State prove the defendant "purposely or knowingly" committed the act. Both the felony statute (section 45-5-202, and the misdemeanor assault statute (section 45-5-201) contain this language. The sole exception is subsection (b) of the misdemeanor assault statute, which describes one kind of assault as "negligently causes bodily injury to another with a weapon."

We must first look to the allegation of the mental state pleaded in count I and count II. The State knew that it could not prove the defendant "purposely" committed the act charged, and so it was not alleged. Instead, the State charged only that defendant "knowingly" committed the act alleged in both counts. The State gambled on the alternative language of the statute--"purposely or knowingly"--and decided that it could allege just that defendant "knowingly" committed the act. I believe, on the other hand, that the State was required to allege and prove that defendant "purposely" committed the act. It was the State's burden to prove that defendant "purposely" drove his car into the Francisco pickup.

Although I will not detail the differences between the statutory mental elements of "purposely," "knowingly," and "negligently," I quote them with the hope that anyone reading them will immediately recognize they do not have the same meaning. They were intended as, and they are, three, separate mental states.

-17-

The highest state of mental culpability is given the
name "purposely." Section 45-2-101(58), MCA, defines
"purposely" as follows:

> "[A] person acts purposely with respect to a
> result or/conduct described by a statute defining
> an offense if it is his conscious object to engage
> in that conduct or to cause that result. When a
> particular purpose is an element of an offense, the
> element is established although such purpose is
> conditional, unless the condition negatives the
> harm or evil sought to be prevented by the law
> defining the offense. Equivalent terms such as
> 'purpose' and 'with the purpose' have the same
> meaning."

The next state of mental culpability is given the name
"knowingly." Section 45-2-101(33), MCA, defines "knowingly"
as follows:

> "[A] person acts knowingly with respect to
> conduct or to a circumstance described by a
> statute defining an offense when he is aware
> of his conduct or that the circumstance exists.
> A person acts knowingly with respect to the
> result of conduct described by a statute defining
> an offense when he is aware that it is highly
> probable that such result will be caused by his
> conduct. When knowledge of the existence of
> a particular fact is an element of an offense,
> such knowledge is established if a person is
> aware of a high probability of its existence.
> Equivalent terms such as 'knowing' or 'with
> knowledge' have the same meaning."

This statute actually defines "knowingly" in several ways,
or sets forth several theories or basis by which a person
acts "knowingly." As I thoroughly explain in part V of this
dissent, the trial court converted section 45-2-101(33)
into a jury instruction which defined "knowingly" in four
alternative ways.

A 1980 annotation for this statute, explains the
concepts of "knowingly" and "purposely" as follows:

> "Under the new Code, the concepts of 'knowingly'
> and 'purposely,' replace the old term 'intentionally.'
> The terms, however, are not synonymous. 'Knowingly'
> refers to an awareness of the nature of one's
> conduct or of the existence of specified facts or
> circumstances. 'Purposely' refers to the actor's
> objective or intended result. The definition for
> 'knowingly' is taken primarily from the Model
> Penal Code, but a significant departure from the
> source is the substitution of the phrase 'high
> probability' for 'practically certain.' Thus,

-18-

the drafters of the new Code chose to substitute a less rigid requirement. Several states, including New York and Illinois, have enacted similar although not identical provisions. The 1977 amendment made some minor grammatical changes." (Emphasis added.) Montana Criminal Code 1973 Annotated (1982 rev. ed.)

The lowest state of mental culpability is given the name "negligently." Section 45-2-101(37), MCA, defines "negligently" as follows:

"[A] person acts negligently with respect to a result or to a circumstance described by a statute defining an offense when he consciously disregards a risk that the result will occur or that the circumstance exists or when he disregards a risk of which he should be aware that the result will occur or that the circumstance exists. The risk must be of such a nature and degree that to disregard it involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. 'Gross deviation' means a deviation that is considerably greater than lack of ordinary care. Relevant terms such as 'negligent' and 'with negligence' have the same meaning." (Emphasis added.)

This definition obviously describes conduct beyond that which is "negligence" as commonly understood in the civil law. It describes conduct that can more aptly be described as gross negligence or criminal negligence.

It is apparent that the terms "purposely" and "knowingly" do not have the same meaning. Each is meant to refer to a different state of mind. Even the term "negligently," however, is meant to refer to a state of mind rather than simply to refer to the character of the act committed. In its comment to the misdemeanor assault statute, the Criminal Law Commission, that body primarily, if not totally, responsible for drafting the 1972 Criminal Code presented to the legislature, stated:

". . . Another change [(from the old criminal code to the present one)] is that the offense must be committed purposely, knowingly or negligently, thus maintaining the intent element consistent with the other proposed statutes dealing with offenses against the person."

This statutory scheme for the mental state is further explained in the Montana Criminal Code 1972 (1980 rev. ed.), where the annotators state:

-19-

". . . Similarly, <u>state</u> of <u>mind</u> <u>is</u> <u>made</u> <u>an</u>
<u>explicit</u> <u>element</u> <u>of</u> <u>the</u> <u>offense</u> with knowledge
or purpose required under subsections (a), (c),
and (d) and negligence required under subsection
(b) . . ." (Emphasis added.) Page 167.

Another statute attempts to explain what proof will
satisfy the mental element where it must be proved that one
acted "negligently" or that one acted "knowingly." Section
45-2-102, MCA, provides:

"When the law provides that negligence suffices
to establish an element of an offense, such
element also is established if a person acts
purposely or knowingly. When acting knowingly
suffices to establish an element, such element
also is established if a person acts purposely."

This statute is also explained in Montana Criminal Code 1972
Annotated (1980 rev. ed.):

"This section is intended to obviate any
possible misunderstanding as to what mental
state will satisfy the requirements of each
statutory provision. Proof of the higher or
more specific mental state will satisfy any
lesser mental state that may be required by
a particular statute."

This statute has the salutary purpose of not permitting
a defendant to avoid criminal responsibility because of a
technicality in proving the mental element of a crime--<u>as</u>
<u>long</u> <u>as</u> <u>a</u> <u>higher</u> <u>more</u> <u>specific</u> <u>mental</u> <u>element</u> <u>has</u> <u>been</u>
<u>proved</u>. But there is no higher mental element than "purposely,"
and therefore proof that an act was "knowingly" committed
does not supply proof that an act was "purposely" committed.
That is why the statute states only that "when acting know-
ingly suffices to establish an element, such element is
established if a person acts purposely." In other words, it
does not state that proof of "knowingly" will suffice for
proof of "purposely" where "purposely" must be established
as an element of the crime.

The "purposely <u>or</u> knowingly" language of the assault
statutes, like all the statutes containing the same language,
provides an impermissible option for the state in deciding
how to allege the mental state. The statutes state in effect:

proof of the highest mental state, that is, "purposely," is desirable, but proof of a lower mental state, that is, "knowingly," will suffice. The State can reason: why bother with alleging and proving a higher mental state-- "purposely"--if a lower mental state--"knowingly"--will suffice? This prosecutor's option is not an acceptable statutory scheme for alleging and proving the mental state required as one of the elements of a crime.

This case fully exemplifies the injustice of a felony charge which has alleged only that the act was "knowingly" committed. An intentional act is the essence of an assault. There was no assault in this case unless the State could prove that defendant "purposely" drove his car into the Francisco pickup. The failure to allege and prove that the act was "purposely" committed should be fatal to the conviction. Yet the defendant has been convicted of aggravated assault on evidence which proves only that he drove his automobile in a criminally negligent manner. The majority rationale for upholding that conviction, if it says what I think it says, is utterly preposterous.

I preface my remarks with an admission that I have had more than a difficult time making some sort of sense out of the majority holding. It appears, however, that the majority did not conclude that the defendant "knowingly" drove his car into the Francisco pickup. Rather, the conclusion is that defendant, throughout the course of the day, acted "knowingly," and his acts or series of acting "knowingly," finally ended in a high probability that defendant would cause an accident. The occurrence of the accident was an aggravated assault because the defendant had acted "knowingly" all day long.

-21-

And now we must look to the evidence relied on by the majority in concluding that the defendant acted "knowingly." First, the majority conclude that evidence of defendant's intoxication supplies proof that he acted "knowingly." This conclusion rests on the incredible assumption that the capacity to act "knowingly" increases with the degree of intoxication. In other words, the greater the degree of intoxication, the greater is the likelihood that one will act "knowingly." This conclusion defies common sense, and, furthermore, flies in the face of a statute. Second, the majority conclude that defendant's flight from the scene is additional evidence that defendant acted "knowingly." This conclusion is equally as astounding because the record is barren of any indication that the State relied on flight to establish the mental state of "knowingly," or to establish anything at all. Nor, of course, does flight help establish the specific mental state with which a person acted. Nor was the jury instructed on flight as an evidentiary proposition and the effect to give to defendant's flight. Third, the majority conclude that defendant's high speed and illegal passing maneuvers also supplied proof that defendant acted "knowingly." This evidence proves that defendant acted in a grossly negligent manner, but it does not tend to prove that he "knowingly" acted. (See part IV of this dissent, where I discuss in detail each of these factors relied on by the majority.)

B. CAUSATION--THE STATE FAILED TO PROVE THE DUAL STATUTORY TEST FOR CAUSATION

The question of whether defendant's act caused the collision, which resulted in the injuries to the occupants of the Francisco pickup, was never in dispute. Defendant

-22-

caused the collision--and his conduct was a "gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." Defendant was drunk and immediately before the collision he was seen by other witnesses to be speeding and making illegal passing maneuvers. But that is only proof of criminal negligence. The State never proved, and the evidence does not exist to prove that the results--the "serious bodily injury" to Jeri Lyn Francisco and the "bodily injuries" to the remaining occupants--were "within the contemplation or purpose" of the defendant. The State proved a causal connection between the act and the results, but it did not prove a causation connection between the mental state--"knowingly,"--and the results. This is yet another reason why the count I conviction must be reversed and the case ordered dismissed.

The conviction here was undoubtedly aided by failure of the parties to consider the statutes relating to causation, and by the failure of the trial court to properly instruct the jury on the law of causation.

Causation cannot be viewed in isolation, that is, by looking solely to a determination of who caused the result. Montana statutes require that there also be a determination of the state of mind of whomever caused the result. If the state of mind did not accompany the act which caused the result, the test for causation under the criminal law, has not been met. Four statutes bear on the question of causation. Section 45-2-201, MCA, defines "causation" in terms of the act and the mental state to be proved. This statute twice refers to the term "conduct," which has a special statutory meaning. Section 45-2-101(14), MCA, defines the term "conduct" as it is used in the criminal code, and "conduct" includes the act and the accompanying mental

-23-

state. Section 45-2-103(2), MCA, sets forth the test as to whether the mental state to be proved applies to each of the essential elements to be proved. And section 45-2-201(2), MCA, requires that the result must be "within the contemplation or purpose" of the defendant.

Proof of who caused the result cannot be separated from the mental state of the person who caused the result. The act, combined with the mental state, determines the issue of causation. Section 45-2-201(1), MCA, defines causation as follows: "'Conduct' is the cause of a result if (a) without the conduct the result would not have occurred . . ." (Emphasis added.) The term conduct in this definition, and throughout the criminal code, has a special statutory meaning that has been constantly ignored. Section 45-2-101(14), MCA, defines "conduct" as follows:

> "'Conduct' means an act or series of acts, and the accompanying mental state." (Emphasis added.)

The result referred to in count I of the aggravated assault charge is the "serious bodily injury" sustained by Jeri Lyn Francisco. The result referred to in count II of the aggravated assault charge is the "bodily injury" sustained by the other occupants of the Francisco pickup. However, for the State to prove causation it was not enough to prove that defendant caused the results--he did. The State was also required to prove that defendant "knowingly" caused those results. He did not.

Another statute, section 45-2-103(2), provides that the State must prove the mental state with respect to each essential element unless it is otherwise specifically provided in the statute creating the crime. That statute provides in part:

-24-

"(1) A person is not guilty of an offense, other than an offense which involves absolute liability, unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described in subsections (33) [which defines 'knowingly',] (37) [which defines 'negligently'], and (58) [which defines 'purposely'] of 45-2-101.. . .

"(2) If the statute defining an offense prescribes a particular mental state with respect to the offense as a whole without distinguishing among the elements thereof, the prescribed mental state applies to each such element." (Emphasis added.)

This statute was ignored in this case. The result of the accident, with relation to the count I charge, is that Jeri Lyn Francisco sustained "serious bodily injury." "Serious bodily injury" was the only essential element to be proved aside from the mental state. The statute required the State to prove that defendant "knowingly" caused the result--"serious bodily injury." Count II had two essential elements to be proved. By this statute, the State had to prove that defendant knowingly caused the result--"bodily injury"--to the other occupants of the Francisco pickup. The State also had to prove that defendant "knowingly" used a weapon. The jury was not instructed on these requirements.

This statute (45-2-103) also had application to the lesser-included negligent assault with a weapon charge. Aside from the negligent state of mind, the State had to prove two essential elements: first, that defendant caused "bodily injury" and second, that it was "with a weapon," that is, that he used a weapon. The statute required the State to prove defendant negligently caused "bodily injury" and to prove that the defendant negligently used a weapon. The jury was not instructed on these requirements.

-25-

To prove that defendant "knowingly" caused the results
(that is, the injuries to all of the occupants), the State
was required to prove that the injuries sustained were
"within the contemplation or purpose of the defendant." Not
a scintilla of evidence shows that injuries to any of the
occupants of the Francisco pickup were "within the contemplation
or purpose" of the defendant. The State therefore failed
to prove the two pronged test of causation--which requires
not only that defendant caused the result, but that he
knowingly caused the result. (See part VIII of the dissent
where I discuss the negligent assault with a weapon charge.)

Where defendant's conduct (his act plus his accompanying
mental state, section 45-2-101(14)), shows a break in the
chain of causation (section 45-2-201(1)), the State has not
proved causation in the context of a criminal charge.
Section 45-2-201, although imprecisely and inartfully drafted,
is designed as a guide in determining the inner and outer
limits of causation with respect to the three statutory
mental states--"purposely," "knowingly," and "negligently."
Where the charge is that a defendant "purposely or knowingly"
caused a result, the test is whether the result was "within
the contemplation or purpose" of the defendant. Section 45-
2-201(2). The statute also sets forth two circumstances
in which defendant will be held responsible even though the
precise result was not within the contemplation or purpose
of the defendant.

> First, "if the result differs from that
> contemplated only in the respect that a
> different person or different property is
> affected or that the injury or harm caused
> is less than contemplated. Section 45-2-201
> (2)(a), MCA. (Emphasis added.)

> Second, if "the result involves the same kind
> of harm or injury as contemplated but the
> precise harm or injury was different or occurred

-26-

in a different way, unless the actual result is too remote or accidental to have a bearing on the offender's liability or on the gravity of the offense." (Emphasis added.) Section 45-2-201 (2)(b), MCA.

To establish causation under the criminal code, the State had to prove that the results ("serious bodily injuries" to Jeri Lyn Francisco, and "bodily injuries" to the other occupants of the pickup) were "within the contemplation or purpose" of the defendant. The phrase "within the contemplation or purpose" was meant to be construed as a unitary test rather than to be split into two tests. Nonetheless, I proceed with my analysis on the basis that two tests are established, and that either one can be applied in determining causation.

The best evidence of the fact that the results were not within the purpose of the defendant is the deliberate decision of the State to omit from the charges an allegation that the act was "purposely" committed. The State knew it could not prove that fact. The term "purposely" is defined in section 45-2-101(58), supra (part IIIA of this dissent), and of course the State did not in any event prove that the act of driving into the Francisco pickup was "purposely" committed. The next question is whether the results were "within the contemplation" of the defendant.

Neither the term "within the contemplation" nor the word "contemplation" is defined by the criminal code. A dictionary definition of contemplate means "to view or consider with considerable attention." The Merriam Webster Dictionary (1974 ed.). Although the word "contemplate" or "contemplation" should perhaps be given a little more leeway when used in the criminal context of causation, nonetheless, the State was at least required to prove that defendant devoted some attention to causing injuries to the

-27-

occupants of the Francisco pickup. It was not required that the State prove that defendant knew who was within the pickup, but simply that he devoted attention to causing injuries to the nameless occupants of the pickup. Not a scrap of evidence shows that the defendant contemplated colliding with the Francisco pickup or any other vehicle. The reason is simple enough: defendant did not knowingly commit the act of driving his car into the Francisco pickup. If he did not knowingly commit this act it cannot be held under any circumstances that he knowingly contemplated (viewed or considered) the probable results of that collision --injuries to the occupants of the Francisco pickup.

The misuse of the criminal intent mental state "purposely or knowingly" has resulted in a gross miscarriage of justice. This, combined with the failure to apply the proper statutory test of causation, resulted in a conviction that cannot meet minimum due process standards. The count I aggravated assault conviction must be reversed and the charge ordered dismissed.

PART IV.  THE STATE FAILED TO PROVE THAT DEFENDANT "KNOWINGLY" COMMITTED THE ACT CHARGED.

The majority conclusion that the State proved defendant "knowingly" committed the act charged cannot be justified on the facts or on the law.  It is built on a majestic house of cards.

At the outset I emphasize that the majority have seized on a definition (that definition suggested in the State's brief) of "knowingly" to justify the affirmance, despite the fact that it has not been shown, and cannot be shown, that the jury relied on that definition or theory in reaching its verdict.  Assuming, therefore, that the majority is correct in its analysis of the facts, the conviction would nonetheless have to be reversed.  Because this is a separate ground for reversal, and because it requires extensive discussion, I cover this issue in Part V of this dissent.

To affirm the conviction the majority relies on several factors which are categorized as circumstantial evidence leading to the conclusion that defendant "knowingly" acted.  Although I agree, of course, with the majority statement that the mental element of a crime may be inferred by circumstantial evidence-rarely does the evidence permit an excursion into the defendant's mind to determine what he was thinking or what his purpose was at the time of the act in question--the fact remains that none of the evidence relied on tends to prove that defendant "knowingly" drove his car into the Francisco pickup.

First, in relying on proof of defendant's intoxication as proof that he acted "knowingly," the majority have given defendant's intoxication a legal effect neither supported by common sense nor by the law.  And, in doing so, the majority have ignored section 45-2-203, MCA, which permits the jury

-29-

to consider intoxication as having the potential to negate proof of the existence of the required mental state to complete the crime. Second, the majority have taken another giant step backwards by effectively holding that flight after the collision tends to prove a specific mental element of the crime--namely, that defendant "knowingly" committed the act charged. This backward step is further compounded because the jury was never instructed on the effect of flight and the uses to which it could be put, nor in fact does the trial record show that the state relied on flight to prove the mental element of the crime charged. Third and finally, the majority have erroneously concluded that proof of defendant's high speed and illegal passing maneuvers constitutes proof that he "knowingly" committed the act charged. This proof establishes defendant's reckless driving immediately preceding the collision, but it hardly establishes that he "knowingly" drove his car into the Francisco car. In summary, these factors do not individually or collectively supply proof that defendant "knowingly" drove his car into the Francisco pickup.

The briefs of both parties were woefully inadequate. Although defense counsel correctly claimed that knowingly was not proved, he devoted little time or energy to demonstrating it. He argued on such an abstract basis that he failed to even refer to the statutory definition of "knowingly" or to the jury instruction (instruction no. 10) which provided the four separate theories on which the jury could consider whether defendant "knowingly" committed the act charged.

The State's brief is no better and is misleading because it implies that the jury was instructed on only one theory of "knowingly." This misleading brief clearly convinced the

-30-

majority for the definition has been used to uphold the convictions. The result is that both parties and this Court have treated the issue in the most perfunctory manner.

The definition or theory of "knowingly" relied on to uphold the conviction, provides:

> ". . . . A person acts knowingly. . .when he is aware there exists a high probability that his conduct will cause a result." Section 45-2-101(3).

With this definition as its legal foundation, the majority then recites the evidence which establishes that defendant "knowingly" committed the act charged:

> During his interview with the investigator for the County Attorney's office, defendant admitted that he had consumed twelve beers, that he was intoxicated, and that he probably should not have been driving when the accident occurred. He also admitted fleeing the accident because of fear. Witnesses described defendant's high rate of speed and illegal passing maneuvers. These facts support the jury's determination that defendant knew there was a high probability that driving while under the influence of alcohol would cause serious bodily injury to another. (Emphasis supplied.)

The emphasized conclusion, based on the evidence recited, is no less than shocking.

First, the majority relied on the overwhelming evidence of decedent's intoxication as proof that he acted "knowingly," although the law permits a jury to consider whether a defendant's intoxication negated the existence of the required mental element to prove the crime.

The proof presented at trial cannot be ignored. The State offered and the trial court admitted in evidence a statement given by defendant to an investigator the same evening of the collision. In stating that "knowingly" was proved, the majority has relied on three statements defendant made to the investigator as to his intoxication:  (1) Defendant

-31-

said he had consumed some 12 cans of beer before the collision; (2) Defendant said he was intoxicated at the time of the collision; and (3) Defendant admitted he probably should not have been driving.

In addition to this proof of intoxication, the State introduced the results of a blood alcohol test taken after the collision which established defendant's blood alcohol count to then be .16 percent, well above the .10 percent legal rate of intoxication provided by Montana statute (section 61-8-401(3)(c), MCA.) (In fact, defendant's blood alcohol content was undoubtedly higher at the time of the collision because it is assumed that the human body metabolizes alcohol at the rate of approximately one ounce of alcohol per hour.) In the factual statement the majority have referred to the results of the blood alcohol test. Beyond this, the defendant had, before his assault trial, been charged with and had pleaded guilty to a charge of driving while under the influence of alcohol. The result of defendant's plea, an admission that he was intoxicated, was also introduced in evidence.

All of this, of course, adds up to overwhelming evidence that defendant was intoxicated when his car collided with the Francisco pickup. Defendant did not take the witness stand nor did he by any other means contend that he was not intoxicated. In fact, defendant did not argue with the fact that he was proved to be intoxicated at the time of the collision. The State was bound by its own proof and defendant was entitled to the benefits of what the State had proved-- namely, that the jury may consider whether his intoxication negated his capacity to "knowingly" commit the act charged.

In proceeding on the theory that "intoxication" will prove that defendant "knowingly" committed the act, the

-32-

State, the trial court, and the majority have ignored a statute which does not permit of that conclusion. The 1973 criminal code sets forth a scheme by which mental states are defined, tests are set forth to determine causation, and factors are set forth which affect individual liability for crime. Section 45-2-203, MCA, declares that voluntary intoxication "may" have an effect on a defendant's capacity to possess a mental state required as an essential element of a crime. Section 45-2-203, MCA, provides:

> "A person who is in an intoxicated or
> drugged condition is criminally responsible
> for conduct unless such condition is involun-
> tarily produced and deprives him of the capacity
> to appreciate the criminality of his conduct
> or to conform his conduct to the requirements
> of law. An intoxicated or drugged condition
> may be taken into consideration in determining
> the existence of a mental state which is an
> element of the offense." (Emphasis supplied.)

This statute declares that although voluntary intoxication is no defense as such to a criminal charge, nonetheless, it may be considered as proof which tends to negate or which may negate the existence of the mental state required to prove the crime. Here, the State was required to prove that defendant "knowingly" committed the act, and the defendant had a right to have the jury consider the effects of his intoxication on his capacity to "knowingly" commit the act charged. A necessary corollary to this statute is, of course, that intoxication cannot constitute affirmative proof that one "knowingly" committed the criminal act charged. One can act "knowingly" in spite of intoxication but he cannot act "knowingly" because of his intoxication.

Defendant was therefore entitled to the benefit of an instruction telling the jury that it could consider his intoxication with relation to the question of whether he had the capacity to "knowingly" commit the act charged. A

-33-

defendant has a right to have the jury consider every theory
or defense supported by the evidence. State v. Thomas (1966),
147 Mont. 325, 413 P.2d 315. The failure to give that
instruction on the effect of voluntary intoxication was
error.

Beyond the failure to give the instruction, however, is
a more serious error. The State's theory that proof of
intoxication proved that defendant "knowingly" committed the
act, was used as a basis for the jury to decide that defendant
had "knowingly" committed the act charged. In effect, the jury
was allowed to find that defendant acted "knowingly" because
he was intoxicated. The State convicted defendant on a theory
that the higher the degree of intoxication proved, the
greater is the likelihood that the defendant "knowingly"
committed the act charged. That is the theory presented to
the jury. Sadly, this inexcusable error went undetected by
defense counsel and by the trial court, and now this Court
has made it the law of this State.

Another factor concerning intoxication deserves comment.
Although it is difficult to isolate the statement entirely,
the majority state that "defendant knew there was a high
probability that driving while under the influence of alcohol
would cause serious bodily injury to another." This statement
has no statistical basis in reality. The chances are greater
that an intoxicated driver will cause an accident, but the
fact of intoxication alone or even combined with reckless
driving in fact, does not establish the probability that an
accident will result. The undeniable and unfortunate fact
is that most drunken and reckless driving goes undetected by
law enforcement officials. If the probability was that
drunken and reckless driving would cause an accident, most
of the innocent driving public would tragically now be

victims of traffic accidents. And hopefully most drunken and reckless drivers would be prosecuted. Anyone knows that is not the case, despite the fact that drunk driving takes a horrendous toll on our highways.

Flight after the collision is the second factor relied on by the majority as constituting circumstantial evidence that defendant "knowingly" committed the act charged. That defendant fled the scene was, of course, proved by the fact that he was not there when the officers arrived. Later, after admitting that he was the driver of the car involved, he told the county investigator that he fled because he was scared. The majority has translated defendant's flight and apparently his explanation of why he fled, into proof that he "knowingly" drove his car into the Francisco pickup.

This reliance on flight is indeed strange. The trial record fails to reveal that flight was ever considered as tending to prove anything at all, let alone the fact that defendant had "knowingly" committed the act charged. The jury was not instructed on flight as a factor to be considered in determining the issue of "knowingly," and neither party mentioned flight in their appellate briefs.

Assuming, furthermore, that flight had some evidentiary value in proving that defendant knowingly committed the act, the rule has long been established that if flight is to be used as evidence, the jury must be instructed on the limits to which that evidence can be put. See Alberty v. United States (1895), 162 U.S. 501, 16 S.Ct. 864, 40 L.Ed. 1051; Hickory v. United States (1895), 160 U.S. 408, 16 S.Ct. 327, 40 L.Ed. 474. In such event defendant is entitled to testify as to why he fled, and the jury must be instructed to consider his explanation in determining what weight to give to flight.

-35-

Cf. Alberty, supra, at 510 (Alberty holds that flight is evidence of innocence as much as it is of guilt, and therefore the jury must be given the opportunity to weigh the flight against all of the surrounding circumstances). Here defendant's statement was introduced in evidence by the State and in it he told the investigator he fled because he was scared. In determining the weight to be given flight, the jury must consider the defendant's explanation of why he fled, and an instruction on flight must so inform the jury. The fact that one fled because he was scared does not tend to prove that he "knowingly" committed the act charged, and the jury should therefore have considered this in determining what weight to give to defendant's fleeing the scene of the accident.

Given this state of the trial record, I am amazed at the majority's grasping at flight as one of the factors which proved that defendant "knowingly" committed the act charged.

Nor can I see that defendant's flight tends to prove he "knowingly" committed the act charged. I am aware of dictum and unsupported statements in cases to the effect that flight can be used to show a specific intent with which the act was committed. But I know of no case directly holding this way. In fact, that concept has long ago been rejected. In State v. Foster (1902), 130 N.C. 666, 41 S.E. 284, the North Carolina Supreme Court stated:

> ". . . We entirely fail to see how it [flight]
> shows or tended to prove deliberation and pre-
> meditation on the part of the prisoner, and
> that was the only matter the jury had to con-
> sider, as it had been admitted that the
> prisoner was guilty of murder in the second
> degree."

The Foster case is analogous here. The defendant did not deny that he caused the accident. But he also denied

-36-

that he "knowingly" drove his car into the Francisco pickup. Had defendant denied he was the driver, defendant's flight from the scene would undoubtedly have been admissible to show that he was the driver, as to show his awareness that he was at fault. But the evidence of flight was not admissible to show what state of mind he possessed when he collided with the Francisco car. His flight could not supply proof that he "knowingly" drove his car into the Francisco pickup.

The third and final factor relied on by the majority as proof that the defendant "knowingly" committed the act, is the testimony of witnesses that defendant had been speeding and illegally passing cars just before the collision. This evidence no doubt shows that defendant was driving recklessly, but neither speed nor reckless driving tend to establish that defendant "knowingly" collided with the Francisco pickup.

In summary, not a scintilla of evidence shows that defendant "knowingly" drove his car into the Francisco pickup. His high speed and illegal passing maneuver just before the collision does not establish that defendant was aware of his reckless driving let alone the collision and resulting injuries were "within his contemplation or purpose." Defendant was guilty of drunken driving (a charge to which he had already pleaded guilty) and he was guilty of reckless driving. If a statute were in effect making one guilty of a serious crime if he recklessly or drunkenly caused an accident which injured other people, he would undoubtedly be guilty of that offense. But no such statute exists in Montana. Instead, the prosecutors, the trial court, and now this Court, have tortured the law beyond recognition in holding that defendant "knowingly" caused "serious bodily injury."

-37-

PART V.  A REVERSAL IS REQUIRED BECAUSE OF AN INABILITY TO DETERMINE THEORY OF "KNOWINGLY" APPLIED BY THE JURY IN DETERMINING GUILT.

The majority opinion rests on an implied and erroneous assumption that only one definition or theory of the essential element "knowingly" was given to the jury.  In fact, instruction no. 10 gave the jury four alternative definitions or theories which it could have applied in reaching its verdict.  It is impossible to determine from the record which theory of "knowingly" the jury used in reaching its verdict.  Assuming therefore, that the majority definition of "knowingly" was supported by substantial evidence, because there is no way of telling whether the jury applied that definition, it still cannot be determined whether the jury reached a correct verdict.  The inability of an appellate court to make this determination requires a reversal.

To properly focus on the issue I must analyze the charges filed, the evidence produced at trial, and the jury instructions.

As I stated in part III of this dissent, the assault statutes require the State to prove that the act was "purposely or knowingly" committed.  However, the State deleted the term "purposely" and charged only that defendant "knowingly" committed the assaults charged.

In charging aggravated assault in count I and in count II (count II is not directly pertinent here because the jury found defendant not guilty of that charge), the State expressly relied on two of the four definitions of "knowingly" contained in section 45-2-101(33), MCA.  The State charged that:

> ". . . the defendant was aware of his conduct
> or that the circumstances existed that it was
> highly probable that as a result of his driving
> a vehicle in a highly intoxicated and reckless
> manner, that he would cause serious bodily injury
> to another person as a result of his conduct."
> (Emphasis added.)

-38-

The entire statute is quoted in full in part III of this dissent, and the jury instruction with all four statutory definitions, is quoted in full in this part of the dissent. I emphasize, however, that the charges were not read to the jury.

The State presented its case and proved that defendant had been driving while intoxicated, that his driving was reckless, and that he caused the collision between his car and the Francisco pickup. The State proved in effect that as a result of defendant's reckless driving, no doubt influenced by his intoxication, that he collided with the rear of the Francisco pickup, which collision caused both vehicles to spin off the highway. All occupants of the Francisco pickup were injured.

Defendant did not testify and presented no evidence in his behalf. After defendant rested his case the court instructed the jury on the law to apply, and in giving instruction no. 10, told the jury that it could apply one of four definitions of "knowingly." Instruction no. 10 stated:

"A person acts knowingly:

"(1) when he is aware of his conduct, or

"(2) when he is aware, under the circumstances, that his conduct constitutes a crime, or

"(3) When he is aware there exists a high probability that his conduct will cause a result, or

"(4) with respect to a specific fact, when he is aware of a high probability of that fact's existence." (Emphasis added.) The emphasized definition is the only one mentioned in the majority opinion.)

To convict defendant of count I (and count II for that matter) aggravated assault, the jury had to determine that he "knowingly . . . caused" the injuries in one of the four

-39-

ways stated in instruction no. 10. The record, however, fails to reveal which definition or theory of "knowingly" the jury applied in reaching its verdict. Inexplicably, the majority has seized on the third definition or theory in determining that the verdict should be affirmed. Only a court with clairvoyant powers could determine that the jury used the third definition, and I have never considered that facility to be one of the powers with which this Court is blessed.

Unfortunately, a reading of the majority opinion leaves one with the distinct impression that only one definition of "knowingly" was given to the jury, an impression which flies in the face of instruction 10.

By ignoring instruction 10 the majority was able to avoid an application of the law which would have required a harmless error analysis before reaching a conclusion as to whether the verdict should be affirmed. Before affirming the majority would have had to conclude by an analysis of the record that the jury beyond a reasonable doubt relied on the third definition of knowingly. Or, alternatively, if the majority could not make that declaration, the majority would have been required to declare that each of the remaining three definitions of "knowingly" were properly given and that each was supported by substantial evidence. A conscientious appellate court could not adopt either alternative.

A fundamental rule of appellate procedure applies to this case. It is a rule designed to assure the reliability and integrity of the trial and review process. This Court has ignored the rule here as well as in other cases where the result was the objective. In a dissent to State v. Price (1980), _____ Mont. _____, 622 P.2d 160, at 170, 37 St.Rep. 1926. I

-40-

stated this rule as follows:

> "The rule I refer to is a simple one: a judgment must be set aside where it is supportable on one ground but not another, if it is impossible to determine which ground was used in reaching the decision. This rule applies to jury-tried cases and to judge-tried cases. It is basic, hornbook law."

In the _Price_ dissent, I cited abundant authority for my position, including decisions of the United States Supreme Court, _decisions_ _of_ _this_ _Court_, and the fundamental rule as set forth in Am.Jur.2d, and C.J.S. (See _Price_, 622 P.2d 170-171.) No need exists to again restate this law. I further discussed application of these rules in three more dissents where the majority in its rush to reach a desired result, ignored even the existence of the problem which would require application of the rule. See Coleman v. State (1981), ____ Mont. ____, 633 P.2d 624, 38 St.Rep. 1352; Fitzpatrick v. State (1981), ____ Mont. ____, 628 P.2d 1002, 38 St.Rep. 1448, and finally, McKenzie v. State (1981), ____ Mont. ____, 608 P.2d 428, 37 St.Rep. 325. I can again only state that I am amazed that this Court can continue to ignore this fundamental rule of appellate review. Perhaps only a federal court can jolt us back to assuming our responsibility.

An analysis, keeping this fundamental rule of review in mind, must begin with the statement that it is impossible to determine which of the four theories of "knowingly" the jury applied in reaching its verdict. The jury returned only a general verdict finding defendant guilty of count I, aggravated assault. Nowhere in the record can it be determined which theory the jury applied. An affirmance, under this state of the record, would be permissible only if it was determined first that all four theories were properly given as instructions, and second, that each of these four theories was supported

-41-

by substantial evidence.  As I shall demonstrate, that is not the case.

Because it is impossible to determine which theory of "knowingly" the jury applied, my analysis would be sufficient merely to show either that at least one theory of "knowingly" was improperly given to the jury as an instruction, or to show that at least one theory of "knowingly" was not supported by substantial evidence.  If either or both of these two conditions exist, a reversal would be required.  The fact is, however, that none of these theories of "knowingly" was properly given in this case, and none of these theories is supported by substantial evidence.  This being the case the disposition required is not merely ordering a new trial.  Rather, the conviction must be reversed and the case ordered dismissed.

I further emphasize that regardless of which theory of "knowingly" was used, it was required that the jury be instructed that the result must have been "within the contemplation or purpose" of the defendant.  (See Part IIIB of this dissent.) The jury was not so instructed.

I proceed next with a discussion of each theory of "knowingly" given to the jury in instruction 10.


(1)  "A person acts knowingly . . . when he is aware of his conduct."

The first theory of "knowingly" given the jury in instruction 10, was that "a person acts knowingly . . . when he is aware of his conduct."  The jury was given no information on what conduct this instruction referred to. Aware of what conduct?  Aware that he was drinking earlier

-42-

in the day and had consumed some 12 cans of beer? Aware that
he had driven off in his car knowing that he was intoxicated?
Aware that he was driving in a reckless manner, that is,
speeding and making illegal passing maneuvers?  Without ever
attempting to set forth the conduct of which defendant
should have been aware, this instruction was clearly improper
as attempting to define "knowingly," an essential element of
the crime of aggravated assault.

The instruction fails to focus on any prohibited conduct
of which defendant was charged with being aware.  Instead,
the jury was free to speculate on the conduct of which
defendant should have been aware.  The instruction, as
given, was no more than an open-ended invitation to the
jury to guess and arbitrarily decide and choose what act or
acts defendant should have been aware of.

And, because the instruction fails to focus on any act or
acts of which defendant should have been aware, an appellate
court has no standard by which it can determine that a
verdict based on this theory is supported by substantial
evidence.  A reversal is required because even assuming the
instruction to be a proper theory, it failed to focus on any
act or acts of which defendant was charged with being aware.
It left the jury free to speculate, and further left the
appellate court in a position of not being able to determine
whether the theory was supported by substantial evidence.  The
appellate court had no act or acts to focus on in reviewing
the evidence.

The first definition alone, therefore, requires a
reversal.

(2) "A person acts knowingly . . . when he is aware, under the circumstances, that his conduct constitutes a crime."

The second definition or theory of "knowingly" was that "a person acts knowingly . . . when he is aware, under the circumstances, that his conduct constitutes a crime." Like the first theory, the jury was given no information as to what conduct or what crime defendant was supposed to be aware of. Aware of what conduct? Aware of what crime? Does it relate to all of defendant's conduct that day, or just to specified parts of his conduct? Does it relate to the crime of driving under the influence of alcohol? Does it relate to the crime of speeding? Does it relate to the crime of reckless driving? Or does it refer to the act of recklessly driving into the Francisco pickup--that is, was he charged with being aware that his conduct of recklessly driving into the Francisco pickup also constituted the crime of aggravated assault? Without ever attempting to set forth the conduct of which he should have been aware, or the crime of which he should have been aware, this instruction was clearly improper as attempting to define "knowingly," an essential element of the crime of aggravated assault.

This definition or theory of "knowingly," without more, failed to focus on any of defendant's conduct of which he should have been aware, or on any crime of which he was charged with being aware that he was committing. Because it fails to set forth any standards for guidance of the jury, it left the jury free to guess. And an appellate court is placed in no better position than the jury. Without specifying

the conduct, or without specifying the crime or crimes, the instruction gives an appellate court no standard by which it can review the evidence to determine its sufficiency.

The second theory of "knowingly" defined in instruction 10, is error and a reversal is required on this ground also.

(3) "A person acts knowingly . . . when he is aware there exists a high probability that his conduct will cause a result."

The third theory of "knowingly" defined in instruction 10, was that "a person acts knowingly . . . when he is aware there exists a high probability that his conduct will cause a result." Like the first and second theories, this instruction fails to focus on the particular conduct which would have caused the defendant to believe there existed a high probability that it would cause a result. What conduct does this instruction refer to? Defendant's conduct of drinking 12 cans of beer in the bar? Defendant's conduct in getting into his car and driving off after he had consumed that much alcohol? Defendant's conduct while driving: high speed and illegal passing maneuvers? At what point was defendant charged with being aware that his conduct would cause a result? At what point was defendant charged with being aware of a high probability that his conduct would cause an accident? Again, this instruction fails to focus on a meaningful time frame or a meaningful event which would trigger a determination of whether he was aware of a high probability that his specific conduct within a specific time frame would cause a particular result.

Like the first two instructions defining "knowingly,"

-45-

the instruction failed to give any guidance to the jury and left the jury free to speculate and pick and choose the time frame and the conduct involved. And if the jury applied this theory in finding the defendant guilty, an appellate court is in no better position to review the sufficiency of the evidence.

Because the majority arbitrarily chose the third definition as a basis on which to affirm the count I, aggravated assault conviction, I have devoted Part IV of this dissent, supra, to a refutation of the so-called evidence which proved that defendant "knowingly" committed the act charged. Evidence of intoxication, evidence of flight, and evidence of high speed and illegal passing maneuvers, falls far wide and far short of supplying proof that defendant "knowingly" drove his car into the Francisco pickup.

(4) "A person acts knowingly . . . with respect to a specific fact  when he is aware of a high probability of that fact's existence."

The fourth and last theory of "knowingly" defined in instruction 10, was that "a person acts knowingly with respect to a specific fact, when he is aware of a high probability of that fact's existence." Again, this definition fails to focus on any fact of which defendant was charged with being aware that a fact existed. The jury was therefore free to speculate and choose any fact that it believed defendant should have been aware of a high probability of its existence. It was neither charged nor proved that

-46-

defendant acted knowingly with respect to any specific fact which would invoke this theory of "knowingly."

The instruction was error because of its omission to focus on a particular fact so that the jury could determine first whether the fact existed, and second, whether defendant was aware of a high probability that the fact did exist. Again, appellate review is impossible because the instruction gives an appellate court no standard by which it can review the sufficiency of the evidence. This requires speculation just like it required speculation on the jury's part. The giving of this instruction therefore, also requires a reversal.

To summarize: I have shown that all four theories of "knowingly" defined by instruction 10, were erroneous. They were simply insufficient as jury instructions and they provide no basis for an appellate court to review whatever a jury may have decided. But even if we assume that the third instruction (the one arbitrarily used by the majority) was proper and that substantial evidence supports that theory, the inability to determine which theory the jury used in reaching its verdict, would still require a reversal. The proper disposition of this case is to reverse and dismiss-- "knowingly" was not properly charged, it was not properly defined for the jury, and it was not proved.

PART VI.   FAILURE TO GIVE LESSER-INCLUDED ASSAULT
INSTRUCTION IS REVERSIBLE ERROR.

The count I aggravated assault conviction must also
be reversed because of the failure of the trial court to
give an instruction on misdemeanor assault as a lesser-
included crime.   This procedure was used for count II and
the jury acquitted defendant of the felony and convicted
only on the misdemeanor.   It is probable that had the trial
court given an instruction for count I, the jury also would
have acquitted on the felony and convicted only on the
misdemeanor.   If so, defendant would not now be in prison
serving a 20 year prison sentence.

Although defense counsel did not request such an instruction,
nonetheless the trial court has a sua sponte duty to instruct
on a lesser-included offense where the evidence will rationally
permit a conviction of a lesser offense.   People v. Hood
(1969), 1 Cal.3d 444, 82 Cal.Rptr. 618, 462 P.2d 370; People
v. Morrison (1964), 228 Cal.App.2d 707, 39 Cal.Rptr. 874.
The failure to instruct falls clearly within the right,
indeed, the duty of this Court to invoke the clear error
doctrine and reverse the conviction.

This Court has long recognized the fundamental rule
that a defendant is entitled to a lesser-included offense
instruction if the evidence would enable the jury to rationally
find him guilty of the lower offense.   State v. Bouslaugh
(1978), 176 Mont. 78, 80-81, 576 P.2d 261, 263 (an assault
case).   In Bouslaugh, this Court cited and quoted State v.
Thomas (1966), 147 Mont. 325, 413 P.2d 315, for the "fundamental
rule that the court's instructions should cover every issue
or theory having support in the evidence."   576 P.2d at 262.
Also see State v. Kyle (1980), ___ Mont. ___, 628 P.2d 260,

-48-

263, 37 St.Rep. 1447.

In Keeble v. U.S. (1973), 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844, 847, (cited in Bouslaugh, supra) the United States Supreme Court recognized that the rule originated as being a prosecution tool but later developed to be a rule which a defendant had a right to invoke. In fact, the Court recognized that a lesser-included offense instruction may be constitutionally required, although not expressly so ruling. The policy consideration behind a lesser-included offense instruction is:

> "Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction."
> 412 U.S. at 212, 213.

The Court further stated that any construction of law prohibiting the giving of a lesser-included offense instruction would present serious constitutional questions under the Due Process Clause. The Court made this broad declaration even though it recognized that it had never expressly held the right to a lesser-included offense instruction is protected by the Due Process Clause. 412 U.S. at 213. I interpret Keeble to at least mean that all courts are best advised to give a lesser-included offense instruction in every case where the evidence will rationally permit of the instruction.

In addition, Keeble and later cases have established that the right to a lesser-included offense instruction is mandatory where two circumstances exist: (1) if evidence would permit a jury to find defendant guilty of the lesser-included offense and acquit him of the greater (Keeble, 412 U.S. at 208); and (2) where some elements of the crime charged themselves constitute a lesser crime. Sansone v. United

-49-

States (1965), 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed. 2d 832; Berra v. United States (1956), 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013. And see Stevenson v. United States (1896), 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980, where, 86 years ago, the Supreme Court held that: a trial court has no power to refuse to give a lesser included offense instruction where there is any evidence that might raise an issue as to whether any lesser crime was committed. The court further held that whether a lesser crime exists is always a question of fact for the jury.

All of this law of course establishes that the failure to give a lesser-included offense instruction cannot be lightly brushed aside. An instruction was clearly required here.

Count I charged defendant with "knowingly" assaulting Jeri Lyn Francisco (an occupant of the pickup) and causing "serious" bodily injury to her. The term "serious bodily injury" is defined by section 45-2-101(59), MCA. This definition was given to the jury as instruction 6, which stated:

> ". . . Serious bodily injury means bodily injury which created substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of function or process of any bodily member or organ inducing serious mental impairment." Instruction 6.

The girl named in count I as the victim, had emergency surgery to remove broken skull fragments and to stop the bleeding of lacerated brain tissue. No doubt the jury could have determined that she sustained "serious bodily injury" as defined by statute and instruction 6, but the jury was not required to do so. Rather, it was within the province of the jury to instead find that she sustained "bodily injury" as defined by section 45-2-101(5), MCA.

Implicit in the right to a jury trial in a criminal case is the right of the defendant to have the jury make the factual determination on each essential element of the crime involved. It therefore was the right of the jury to reject "serious" bodily injury and to find instead that the girl sustained "bodily" injury. Bodily injury, is by its nature, included within the term "serious" bodily injury. It is a misdemeanor for one to purposely or knowingly cause bodily injury to another.

The misdemeanor assault statute (section 45-5-201, MCA) has four definitions or theories by which an assault can be committed. Subsection (a), the applicable subsection here, provides that a person commits assault if he "purposely or knowingly causes bodily injury to another." (Emphasis added.) The term "bodily injury" is defined by section 45-2-101(5), MCA, as "physical pain, illness, or any impairment of physical condition and includes mental illness or impairment." Without question Jeri Lyn Francisco sustained physical pain and had some impairment of physical condition. The only difference between felony assault as charged and misdemeanor assault under subsection (a), is that for a felony the injury must be "serious," while for the misdemeanor it is sufficient that it be "bodily injury." Obviously any "serious" bodily injury sustained by the victim necessarily includes the lesser element of "bodily injury" defined as "physical pain . . . or impairment of physical condition." It therefore was a jury question to determine the degree of injury sustained. The jury was not given the choice because it was not given a lesser-included assault instruction. This is reversible error. Bouslaugh, supra.

The prejudice is manifest. The jury had a choice for count II and decided only that defendant was guilty of the misdemeanor. If the jury had the same option here the

-51-

probability is that it would also have convicted defendant only of the misdemeanor. Assuming that defendant was convicted of two misdemeanors, and further assuming that one sentence was made to run consecutively to the other, the most time he could serve would be one year in the county jail. Section 45-5-201, supra. However, the aggravated assault conviction has resulted in defendant being sentenced to the maximum term in prison--20 years. In addition, the trial court (illegally, as I explain in part IX) sentenced defendant to the maximum six months for the misdemeanor and ordered that it run consecutively to the 20 year sentence for aggravated assault.

Part VII.  Inconsistent Verdicts:

PART VII.  THE GUILTY VERDICT ON COUNT I AGGRAVATED ASSAULT
FLIES IN THE FACE OF THE NOT GUILTY VERDICT ON COUNT II
AGGRAVATED ASSAULT.

In holding that the verdicts are not inconsistent, the
majority have totally ignored the effect of the count II
aggravated assault verdict of not guilty.  The guilty verdict
to count I flies in the face of the not guilty verdict to
count II.

The count I and count II charges arose from one act and
one mental state which accompanied that act.  While drunk
driving on the highway, defendant recklessly collided with
the Francisco car, causing injuries to five people.  Defendant
could not act "knowingly" with regard to the named victim in
count I without also acting "knowingly" with regard to the
named victims in count II.  Conversely, if defendant did not
act "knowingly" with regard to the named victims in count II
he also did not act "knowingly" with regard to the named
victim in count I.  That is the situation here:  the guilty
verdict to count I aggravated assault is totally inconsistent
with the not guilty verdict to count II aggravated assault.
The count I conviction must be reversed; it is both illogical
and unfair to let it stand.

But for the vital fact that the jury acquitted defendant
on count II aggravated assault, I could agree in principle
with the majority result.  If one acts knowingly, he also
acts negligently, the majority concludes, and therefore it
is not inconsistent for a jury to decide in count I that a
defendant acted "knowingly" and that in count II that defendant
acted "negligently."  But I do not agree with the majority
reasoning.  It is inconsistent for a defendant to simultaneously
have two mental states.  However, a statute requires, and I
see no constitutional impediments, that if a lower mental

-53-

state is alleged, and a higher mental state is proved, one cannot avoid criminal responsibility because of this technicality. Section 45-2-102, MCA, provides:

"When the law provides that negligence suffices to establish an element of an offense, such element/is established if a person acts purposely or knowingly. When acting knowingly suffices to establish an element, such element also is established if a person acts purposely." (Emphasis added.)

The essence of this statute is to declare as a matter of law that if one is proved to have acted "knowingly," he cannot avoid a conviction where the required mental state is only that he acted "negligently."

But the result reached by the majority, and approved by the directive of section 45-2-102, MCA, can only be reached if the only charge in count II was that defendant acted "negligently." If that were so, the fact that defendant was proved to have acted "knowingly" with respect to count I would also constitute proof that he acted "negligently" with respect to count II. The undeniable fact is, however, that defendant was charged in count II with "knowingly" committing the assault, and the jury acquitted him of this charge before it found him guilty of the lesser-included misdemeanor offense which required only that the State prove he acted "negligently." It was inconsistent for the jury to conclude that defendant did not act "knowingly" with respect to count II, but that he did act "knowingly" with respect to count I.

Instruction no. 9 set forth the elements of the count II aggravated assault charge which the State was required to prove: First, that defendant acted knowingly; second, that he caused bodily injury; and third, that he used a weapon. The instruction further told the jury what its duties were in relation to this charge:

-54-

". . . If you find from your consideration of all of the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

"If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

I must assume that the jury followed this instruction because it is assumed that the juries do follow the instructions. This being so, it is clear that the jury first considered the count II aggravated assault charge, determined that defendant was not guilty, and then the jury determine whether defendant was guilty of negligent assault with a weapon. What is most important, however, in the jury finding defendant not guilty of the count II aggravated assault charge, is that the jury must have decided that he did not "knowingly" commit the act charged. This is so because the remaining elements for count II assault and the lesser-included misdemeanor assault charge, are the same: the jury was required to find for each offense that defendant caused bodily injury with a weapon.

In finding defendant guilty of count II misdemeanor negligent assault, the jury obviously found that defendant caused bodily injury and that he used a weapon. In fact, only one instruction defined "bodily injury" and "weapon" for the jury, and this instruction (no. 7) was used to define these elements for both the felony charge and the misdemeanor charge. Logic would therefore dictate that the jury rejected the essential element of the count II felony charge that defendant "knowingly" omitted the act charged. Instead, the jury found that he "negligently" committed the act charged and so convicted him of the misdemeanor.

-55-

The majority decision, as I have stated, is based on the omission of the vital fact that the jury with relation to count II, found defendant not guilty of possessing a "knowingly" state of mind. That conclusion is inescapable.

Defendant was charged in count II with "knowingly" committing an aggravated assault on the other occupants of the Francisco car. But the jury was also instructed on negligent assault as constituting a lesser-included offense. The jury convicted defendant of the misdemeanor. Conviction of this lower crime requires an assumption, based on the double jeopardy clause of the United States Constitution, that the jury acquitted defendant of the higher aggravated assault charge. Green v. United States (1957), 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199. See also 22 C.J.S. Criminal Law § 284. Under Green a further prosecution on the aggravated assault charge would be barred.

Beyond the result required by the United States Constitution, however, it appears that the jury in fact found defendant not guilty of the count II aggravated assault charge. This conclusion is supported by an analysis of the record. Unfortunately, the District Court record before this Court on the appeal did not even contain a verdict form which aggravated assault charge--although it did contain a guilty verdict form which the jury did not sign. Although this seems to be highly unusual, I must conclude that the trial court assumed that a conviction of negligent assault would stand as an implied acquittal of the higher aggravated assault charge. This conclusion is further supported by the jury instruction setting forth the elements of the aggravated assault charge and informing the jury of what its duties were in reaching a guilty or not guilty verdict.

-56-

Based on this record, I have no difficulty in concluding that the jury rejected the count II allegation that the defendant "knowingly" drove his car into the Francisco car. The count I conviction therefore, is unquestionably inconsistent with the count II acquittal. A defendant cannot act knowingly and not knowingly at the same time while undertaking the same act. The inconsistency between the guilty verdict and not guilty verdict cannot be reactionally explained, a manifest injustice appears on the face of the record, and justice requires that the count I aggravated assault conviction be reversed for failure of the State to prove that the defendant "knowingly" committed the act charged.

Unfortunately, the majority has ignored a clear mandate to reverse the count I aggravated assault acquittal—which acquittal necessarily determined that defendant did not knowingly commit the act charged. But ignoring an essential fact does not change the mandate to reverse. Some court will reverse, although it may not be this Court.

PART VIII.  ASSAULT WITH A WEAPON WAS NOT PROVED.

Defense counsel raised no issue in the trial court or in this Court as to whether it was proper, under the facts of the case, to charge in count II that defendant committed assault "with a weapon." Instead, defense counsel proceeded on the erroneous assumption that an automobile is, under all circumstances, a weapon. It appears, however, that defense counsel was at least aware that the jury should have the option of finding that defendant negligently used a weapon rather than intentionally used a weapon. At the conclusion of the trial, defense counsel offered and the trial court gave an instruction (no. 5), which permitted the jury to find only that defendant committed negligent assault "with a weapon." Fortunately for defendant, the jury found him guilty only of negligent assault. I say fortunately because if he had been convicted of count II felony assault, the trial court would undoubtedly have sentenced him to the maximum 20 years in prison and made it run consecutive to the 20 year sentence imposed for the count I conviction of felony assault.

At the hearing of this appeal, at least two members of this Court were concerned as to whether the State had proved that defendant had, by his reckless driving which caused the accident, used a weapon. Defense counsel responded that he proceeded with the case on the assumption that defendant's automobile was a weapon without regard to its intended use.

The "with a weapon" requirement is an essential and the vital element of one felony assault provision (section 45-5-202(b)) and of one misdemeanor assault provision (section 45-5-201(b)). This essential element requires discussion because the State has clearly misused these assault provisions in this case and because the State will now undoubtedly continue

-58-

to use these provisions by charging assault in automobile accident cases involving reckless driving and bodily injuries to innocent users of the highway. Under the plain error doctrine we have an obligation to the defendant and to the legal system to discuss and decide the "with a weapon" issue. The issue is too important to ignore, as the majority has chosen to do.

Even though the jury acquitted defendant of the count II felony assault with a weapon charge, the propriety of the charge must be discussed. The implications of the majority opinion are that it has given the green light to the State to charge assault with a weapon whenever the reckless driving of a person causes bodily injury to other users of the highway. The State must be aware that if it persists in so misusing the assault statutes, it is on more than thin ice.

I summarize my position as follows. Use of a weapon is an essential and the most important element under both the felony assault provision and the misdemeanor provision involved here. In a felony charge it must be proved that defendant "purposely or knowingly" (although the State now uses only the term "knowingly") used a weapon. In a misdemeanor charge, the State must prove that defendant negligently used a weapon. In either case the State must first prove that defendant was aware he was possessing a weapon. Under the charges here the State was required to prove that defendant was aware the automobile he was driving was a weapon. Absent proof of this awareness, the State cannot prove that defendant used his automobile as a weapon. That is precisely the situation here. The State could not and did not prove that defendant used his automobile as a weapon.

I divide this part of my dissent into several parts. A: The procedural context of the case--the count II assault charges, the instructions given, and the proof required. B: The "with a weapon" requirement as an aggravating factor under the felony assault statute and as the sole element which makes negligent assault a crime. C: The definition of "weapon" and the requirement that the item involved be put to a specific use. D: Use of an automobile in a misdemeanor charge of negligent assault "with a weapon."

## A. THE PROCEDURAL CONTEXT OF THE CASE: THE COUNT II CHARGES AND THE JURY INSTRUCTIONS GIVEN FOR EACH COUNT:

I first emphasize that I proceed on the assumption that the State had correctly charged the mental state to be proved. In part IIIA of this dissent, I have stated why the State was required to allege the mental state of "purposely or knowingly" rather than merely "knowingly."

To prove defendant guilty of count II aggravated assault, the State was required to prove (1) that defendant knowingly caused bodily injury to the four persons named in count II; and (2) that defendant knowingly used a weapon. Section 45-2-103(2), discussed in part IIIB, supra, states that where a statute does not specify which element the mental state applies to, the State must prove the required mental state as to each element. The assault statute, section 45-5-202(b), MCA, does not so specify, and therefore the State was required to prove knowingly as to both bodily injury and as to use of a weapon.

Because section 45-2-103(2), MCA, also applies to the charge of misdemeanor assault, the State was required to prove (1) that defendant negligently caused bodily injury to the four persons named in count II, and (2) that defendant negligently used a weapon.

-60-

The trial court failed to instruct the jury on the application of section 45-2-103(2), MCA. On the count II felony charge the court failed to instruct the jury that the mental state "knowingly" must be proved as to both essential elements. And on the lesser-included offense of misdemeanor assault, the court failed to instruct the jury that the mental state "negligently" must be proved as to both essential elements. Assuming no other error in this case, this error alone would require a new trial on the misdemeanor assault charge. A new trial could not, of course, be ordered on the count II aggravated assault charge because the jury acquitted defendant of that charge.

The trial court gave the jury two instructions on count II aggravated assault "with a weapon." Instruction 7 defined the offense and defined the essential elements. It stated:

> "As to Count II, a person commits the offense of aggravated assault if he knowingly causes bodily injury to another with a weapon.
>
> "Bodily injury means physical pain, illness, or impairment of physical condition.
>
> "A weapon means any instrument, article or substance which regardless of its primary function, is readily capable of being used to produce death or serious bodily injury." Instruction 7.

The definition of bodily injury was that as defined in section 45-2-101(5), MCA, and the definition of weapon was that as defined in section 45-2-101(71), MCA.

The court set forth the essential elements of the crime in instruction 9:

> "To sustain the charge of Count II: Aggravated Assault, the state must prove the following propositions:
>
> "First: That the defendant acted knowingly,
>
> "Second: That the defendant's conduct was the cause of bodily injury to Rochelle Francisco, Shirley Francisco, Kevin Schmidt and Brenda Schmidt,

-61-

"Third: That the defendant <u>used</u> <u>a</u> <u>weapon</u>.

"If you find from your consideration of all
the evidence that each of these propositions
has been proved beyond a reasonable doubt, then
you should find the defendant guilty.

"If, on the other hand, you find from your con-
sideration of all the evidence that any of these
propositions has not been proved beyond a reasonable
doubt, then you should find the defendant not
guilty." (Emphasis added.)

Only one instruction was given on the lesser-included

charge of negligent assault "with a weapon." Instruction 5

stated:

"You are instructed that the offense of aggravated
assault also includes the offense of assault.

"A person commits the offense of assault if he
negligently causes bodily injury to another
<u>with</u> <u>a</u> <u>weapon</u>." (Emphasis added.)

The jury, in convicting defendant of negligent assault,

apparently looked to instruction 7 for the definitions of

"<u>bodily</u> <u>injury</u>" and of "<u>weapon</u>."

As I have explained in part VII of this dissent, the

jury, in acquitting defendant of the count II felony charge,

found that he did not act knowingly. But the question in

the lesser-included misdemeanor charge was not simply whether

he negligently caused bodily injury to the people named in

count II as victims. The question was also whether he

negligently used a weapon to inflict those injuries.

That defendant negligently acted as that term is defined

in section 45-2-101(37) and defined for the jury in instruction

12, cannot be doubted. His drunken and reckless driving

(speeding and illegal passing maneuvers) was ". . . a gross

deviation from the standard of conduct that a reasonable person

would observe in the actor's [defendant's] position . . ."

And it is equally true that defendant's negligent act caused

-62-

the collision which resulted in "bodily injury" to the occupants of the pickup. Instruction 7 (section 45-2-101 (5) defined bodily injury as "<u>physical pain</u>, illness, or impairment of physical condition." The injuries to these people, described in the majority opinion, proved that each had sustained "bodily injury." But it was not enough for the State to prove that defendant negligently caused a result-- the bodily injuries to these four people. The State was also required to prove, but did not prove, that defendant negligently used a weapon--that is, that defendant negligently used his automobile as a weapon. It is certainly true that defendant negligently drove his automobile; but he did not negligently use his automobile as a weapon.

The statute defining "weapon" is important--it does not declare an automobile or anything else to be a "weapon" as a matter of law. Rather, each item allegedly used as a weapon, must be considered under the circumstances of each case before a decision can be made that it was a weapon. Whether an item is a weapon depends, of course, on how it is used. Here the State could not prove that defendant negligently used his automobile as a weapon unless it could first prove that defendant was aware he had converted his automobile from its primary use as a means of transportation to an illegal use as a weapon. That evidence does not exist.

B. THE ESSENTIAL ELEMENT OF "WITH A WEAPON" AS AN AGGRAVATING FACTOR UNDER THE FELONY ASSAULT STATUTE, AND AS THE SOLE FACTOR WHICH MAKES NEGLIGENT ASSAULT A CRIME:

Under the felony assault provision, section 45-5-202(b) makes use of a weapon the aggravating factor--that is, the factor which makes the crime more serious than it would be if no weapon was used. If one "purposely or knowingly caused bodily injury to another with a weapon" he can be sentenced to

a maximum of 20 years in prison. But if one "purposely or knowingly causes bodily injury to another" without a weapon, it is only a misdemeanor subject to a maximum jail sentence of 6 months. Section 45-5-501(a), MCA.

Use of a weapon is also vital to one provision of the misdemeanor assault statute. Section 45-5-201(b) provides that one is guilty of assault if he "negligently causes bodily injury to another with a weapon." (Emphasis added.) On the other hand, if no weapon is used it is not a crime for one to negligently cause bodily injury to another.

Whether the charge be felony assault with a weapon or misdemeanor assault with a weapon, if use of a weapon is to be the vital element of the crime, the State must at least prove the defendant was aware he was possessing and using a "weapon." That, of course, would not be difficult in a case where one is possessing and using a gun or a knife. But this requirement is especially important where the item alleged to be a weapon does not have a primary use as a weapon--such as an automobile. Defendant would be deprived of due process of law if he was convicted of using a weapon in a situation where he did not even know the item he was using was a weapon.

The "with a weapon" requirement of both the felony and the misdemeanor assault provisions, cannot be lightly considered. Unfortunately, the result of the majority opinion is that it has impliedly given the green light to the State to use the assault statutes in prosecuting drunk driving or reckless driving cases where a collision results in injuries to other users of the highway. The assault statutes were not intended for that purpose.

C. DEFINITION OF "WEAPON":

-64-

One definition controls the determination of whether

an item is a "weapon" under the felony assault statute and

under the misdemeanor assault statute.  Section 45-2-101

(71), defines "weapon" as follows:

> "A weapon means any instrument, article, or
> substance which, regardless of its primary
> function, is <u>readily</u> <u>capable</u> of <u>being</u> <u>used</u>
> <u>to</u> <u>produce</u> <u>death</u> <u>or</u> <u>serious</u> <u>bodily</u> <u>injury</u>."
> (Emphasis added.)

This statute, which does not list any item as a weapon per

se, was taken, with slight modifications, from a New York

statute.

New York Penal Statute § 10.00(13) defines "dangerous

instrument" as:

> ". . . any instrument, article, or substance
> including a 'vehicle' as that term is defined in
> this section, <u>which</u> <u>under</u> <u>the</u> <u>circumstances</u> <u>in</u>
> <u>which</u> <u>it</u> <u>is</u> <u>used</u>, attempted to be used or threatened
> to be used, is readily capable of causing death
> or other serious physical injury."  (Emphasis
> added.)

The Practice Commentary to the New York statute emphasizes

that whether an item is a "dangerous instrument," depends on

how it is used:

> ". . . a 'dangerous instrument,' which is not
> necessarily designed as a weapon and ordinarily
> has a perfectly legitimate function, is defined,
> in subdivision 13, not in terms of specific items
> or attributes but in terms of <u>temporary</u> <u>use</u>.  It
> would be futile to attempt to define a 'dangerous
> instrument' in absolute terms—as, for example,
> one which is capable of producing death or serious
> physical injury—for this would apply to almost
> every item on earth (e.g., a fountain pen is capable
> of producing blindness if jammed in a person's eye).
> Accordingly, this subdivision designates '<u>any</u> instrument,
> article, or substance' as 'dangerous' when <u>used</u>, or
> attempted or threatened to be used, in a manner
> rendering it 'readily capable of causing death or
> other serious physical injury.'"

Although the terminology is different, both the New

York and Montana definitions focus on how the "instrument,

article, or substance" is used.  It appears, furthermore, that Montana's definition is even broader than New York's, in that it is designed to cover nearly every item under the sun, that is, anything that is ". . . readily capable of being used to produce death or serious bodily injury."  Two factors in the Montana definition must be emphasized.

First, no item can be a "weapon" unless it was used as a weapon.  The Montana statute does not list any item as a weapon per se.  It can therefore be determined whether an item was a weapon only by examining the circumstances in which it was used.  The language of the Montana statute--"readily capable of being used to produce death or serious bodily injury"--clearly requires a conversion from the primary use to an illegal use--and that cannot be done without the intent of the user to do so.

Second, the item used must be "readily capable" of producing the proscribed harm.  Regardless of their intended use, not all items are "readily capable" of producing the proscribed harm.  I can, for example, see situations under the Montana statute defining weapon, where one can intend to use an item as a weapon and yet it may not have been "readily capable of being used to produce death or serious bodily injury."

The example used in the New York Commentary is the use of a fountain pen.  A fountain pen can put out a person's eye and so it is clearly capable of being a "dangerous instrument" under the New York statute, or a "weapon" under the Montana statute.  Whether it is wielded by a 250 pound man or a 110 pound man, it can readily be used to put an eye out.

On the other hand, consider rolled up paper placed in a person's mouth to gag him.  Is the rolled up paper a "weapon"

-66-

under the Montana definition?  Is the rolled up paper
". . . readily capable of being used to produce death or
serious bodily injury?"  A good case can be made that rolled
up paper does not have the inherent quality to be classified
as a "weapon" regardless of its actual use.  A 250 pound
man may well be able to convert the rolled up paper into a
weapon by inserting it in a person's mouth to gag him.  But
a 110 pound person may not have the same physical ability to
put the rolled up paper to that illegal use.  In determining
whether an item is a "weapon," one focus must be whether the
item can be quickly and easily adapted from a legal use to
an illegal use, with the capability of "producing death or
serious bodily injury."  A fountain pen has that inherent
quality in the hands of either a 250 pound man or a 110 pound
man; but rolled up paper in the hands of the same men does not
have the same inherent quality.  A fountain pen, therefore, may
be a "weapon;" rolled up paper may not be a "weapon."

How does the State prove that an item was used as a weapon?
The method of proof in an intentional assault case is not
available where the charge is simply that of negligent assault.
For example, intent is an essential element of the crime in
a traditional assault case.  In Montana, the term "purposely
or knowingly" was substituted for the former phrase "intentionally
and feloniously."  State v. Klein (1976), 169 Mont. 350, 547
P.2d 75.  Accordingly, where an intentional assault is charged
("purposely or knowingly"), the item used to inflict the bodily
injury would simply be the means by which the intentional act
was accomplished.  If an item was "purposely or knowingly"
used to inflict "bodily injury" on another, the question would
simply be whether that item was ". . . readily capable of being
used to produce death or serious bodily injury."  In other words,

-67-

even though bodily injury was purposely or knowingly inflicted on another by the use of an item, the jury must still make a determination of whether that item was a "weapon"-- whether it was "readily capable of being used to produce death or serious bodily injury."

But what of the nontraditional assault case--a situation where the charge under section 45-5-201(b) is that a defendant "negligently caused bodily injury . . . with a weapon?" How does the State prove that defendant committed a negligent assault with a weapon unless it is first proved that defendant knew he was possessing a weapon? I have no problem with the concept that one who acts negligently (criminal negligence) with a weapon and thereby causes bodily injury to another, should be subject to the criminal law. For example, if a defendant possessed a loaded firearm, and in acting negligently caused bodily injury to another, a conviction of negligent assault may be justified. Everyone knows that a loaded firearm is a weapon. But I cannot accept a fact situation where it is not proved that defendant knew he possessed a weapon. And that is the case here.

I next consider the application of Montana's assault statutes to situations where it is alleged that an automobile has been used as the instrument of the assault.

D. USE OF AN AUTOMOBILE IN A FELONY CHARGE OF ASSAULT "WITH A WEAPON":

An automobile is, without doubt, "readily capable of being used to produce death or serious bodily injury." The grim highway statistics of fatalities and injuries provide sufficient proof of the automobile's capability to be an instrument of destruction. But this was not a proper case for charging defendant with felony assault with a weapon.

-68-

A proper case for application of the aggravated assault statute where an automobile is used as the instrument of the assault, is illustrated by State v. Heine (1976), 169 Mont. 25, 544 P.2d 1212. The testiony in Heine established that the defendant deliberately caused a head-on collision with another veihcle in which his ex-wife was riding. Testimony established an actual intent to harm the occupants of the other car--the defendant's car was aimed at the victim(s) just as a gun is aimed.

But this case stands in stark contrast to the Heine case. Defendant did not intentionally drive his car into the rear of the Francisco pickup. Rather, his reckless driving (high speed and illegal passing maneuvers), no doubt influenced by his high degree of intoxication, caused the accident which resulted in the injuries to the occupants of the Francisco pickup. Defendant did not intend the collision, let alone the resulting injuries to the occupants of the Francisco pickup. In Heine, by contrast, the defendant chose his automobile as the means by which to cause bodily injury to the occupant(s) of the vehicle which he deliberately rammed.

The evils of using assault statutes to cover situations not intended, are illustrated by two Arizona cases, Brimhall v. State (1927), 31 Ariz. 522, 255 P. 165, and State v. Balderrama (1964), 97 Ariz. 134, 397 P.2d 632. After a 33 year period of injustice, the Arizona Supreme Court finally decided in Balderrama, that assault statutes could apply to vehicular collisions only where the facts show that a defendant intended to use his automobile as the instrument to inflict the injuries.

In Brimhall, the defendant was accused of felony assault in a situation where he was drunk and recklessly ran into

-69-

another automobile causing injuries to its lone occupant. The evidence established that defendant was drunk and that he was driving recklessly. In his appeal, defendant argued that the State failed to prove he intentionally drove his car into the other vehicle, and therefore that he could not have committed an assault. In upholding the conviction, the Court reasoned that if reckless driving conduct can result in a manslaughter conviction where the victim dies, reckless driving should also result in an assault conviction if the injured person did not die. The Court, of course, deliberately ignored the fact that manslaughter statutes specifically provided that grossly reckless conduct in causing the death of another could be the basis of a criminal prosecution. The assault statutes did not, of course, contain that language. Justice Lockwood dissented, but his dissent was not to become law until 33 years later, when, in State v. Balderrama, supra, the Arizona Supreme Court recognized the illogic and unfairness of the Brimhall decision and overruled it, holding that the assault statutes could apply only to situations where an intentional assault was allegedly committed.

In Balderrama, it was charged that defendant, while driving his car, struck a school boy who had just alighted from a school bus. Evidence was conflicting as to whether the boy was struck by defendant's car or whether he fell in an effort to avoid being struck by defendant's car. The boy sustained minor injuries when he struck the pavement. Defendant was driving between 35 and 45 miles per hour, an imprudent speed according to witnesses. Defendant was also drunk. The State charged and convicted defendant of the felony assault with a dangerous weapon.

In reversing the conviction, the Court expressly recognized that all previous assault with a dangerous weapon prosecutions were based on the defendant's use of the instrument as a weapon. 397 P.2d at 633. In holding that defendant's driving of the car could not be classified as use of a weapon because there was no proof he intended to use it as a weapon, the Court adopted the dissenting rationale of Justice Lockwood in Brimhall v. State, supra, where he condemned the judicial conversion of intent statutes into criminal negligence statutes:

> ". . . It is universally held in the English speaking jurisdictions that no act alone is a crime unless accompanying it there is either an intent to do the specific act, or else criminal negligence which causes it. I think it is almost as well established, and with equal reason, that criminal neglect can supply the place of the intent only when the legislative power has expressly so provided. The Legislature can, and frequently does, for reasons of public policy, make a specific act criminal when it is negligently but not intentionally done. In view of the increasing use of powerful machinery such as automobiles by persons who are little qualified either temperamentally, mentally, or physically to control them properly, it would no doubt be wise for the Legislature to provide, in the interests of public safety, that any person who operated such machinery was not only civilly but criminally responsible for his negligence. A statute to this effect would be specific and involve nothing beyond the particular case under consideration." (Emphasis added.) 397 P.2d at 636.

The Court expressly overruled Brimhall to the extent it controlled the result, and in criticizing the use of assault statutes to cover automobile accident cases, the Court further stated:

> "There is today no necessity for the courts to torture statutes to cover the modern problems presented by the automobile. If present laws specifically dealing with automobiles are inadequate, and additional sanctions are needed, the remedy lies with the legislature." 397 P.2d at 636.

The Court ruled that criminal neglect cannot supply the requirement of intent unless the legislature has enacted a

-71-

specific statute, and therefore the defendant's conviction
must be reversed because it was not proved that he intended
to use his automobile as an assault weapon.

The legislature has not acted in this State to create
a crime based on criminal negligence in driving an automobile
which causes injuries to another user of the highways.  Absent
that legislation, the State had no right to charge defendant
with assault with a weapon where the proof at most was that he
was drunk, and without intent, recklessly drove his car into
the rear of the Francisco pickup.  Defendant should never have
been compelled to defend such a charge, for such a charge
should never have been filed.  The State tortured the assault
statutes, the trial court permitted the State to torture the
assault statutes, and now this Court has impliedly permitted
the State to torture the assault statutes by refusing to
discuss and decide the assault "with a weapon" issues.

E.   NEGLIGENT ASSAULT "WITH A WEAPON" UNDER THE MISDEMEANOR
STATUTE:

Section 45-2-103(2), supra, requires the State to
prove defendant both negligently caused the bodily injuries
and that he negligently used a weapon.  The State proved that
by defendant's reckless and drunken driving he caused bodily
injuries to the four persons named in count II, but the State
did not prove that defendant negligently used a weapon.  The
State failed to prove an awareness on the part of the defendant
that he had converted his automobile from its primary use as
a means of transportation to an illegal use as a weapon.  No
evidence exists to prove that defendant knew he possessed
a weapon in the form of an automobile.

In creating the crime of negligent assault, the legislature
focused on the use of a weapon as the gist of the crime.  It
is no crime to negligently cause bodily injury to another--

-72-

unless a weapon is used.  If use of a weapon in a negligent manner is to be the gist of the crime, a person should not be punished unless it is proved that he knew the item involved was a weapon.  That is especially so where the intrinsic nature and primary use of the item involved is not that of a weapon--such as an automobile.  That proof was not available in this case.  Proof that defendant drove his automobile in a criminally negligent manner and as a result caused injuries to other users of the highway, is not proof that he was aware he was using his automobile as a weapon.

In a charge of intentional assault, the intent to use a weapon in the assault is proved by the circumstances of the assault.  If one intentionally inflicted bodily injuries on another and used an instrument to inflict those injuries, it would be rather difficult for the defendant to assert that the instrument was not intended for use as a weapon.  But even in the case of intentional assault it would be a jury question to determine whether the instrument was ". . . readily capable of being used to produce death or serious bodily injury."  Section 45-2-101(71), supra.  But that method of proof is not available where the charge is that defendant "negligently caused bodily injury to another with a weapon." If the only evidence available is that defendant acted negligently rather than intentionally, the State must at least prove that defendant knew he was possessing a weapon.  That evidence is nonexistent in this case.  Furthermore, defendant's automobile could not be a weapon unless he deliberately converted its use as a means of transportation to an illegal use as an instrument to inflict bodily injuries on another.

To uphold the negligent assault "with a weapon"
conviction would require a holding that an automobile
driven in a criminally negligent manner is a "weapon" as a
matter of law. I stress, however, that such holding cannot
be justified under the statutory scheme by which use of a
weapon is to be determined. The question of whether an
item was a "weapon" must, under Montana's statutory scheme,
always be determined by a jury.

In felony assault cases some courts have declared that
an automobile driven in a criminally negligent manner is a
"dangerous instrument" as a matter of law. See the cases
cited in State v. Balderrama, supra, 397 P.2d at 635.
However, as the Balderrama decision correctly noted, this
result can be reached only by ignoring the statutory require-
ment that the State must prove an intentional act and that
the item involved was "intended to be used as a weapon."
397 P.2d at 633. But the torturing of assault cases to reach
this result could not apply in this case for yet another
reason: the statutory definition of "weapon" requires a
jury to determine whether the item involved was a weapon and
whether it was used as a weapon.

The statute defining "weapon" (section 45-2-101(71), MCA,
supra) does not list any items as weapons. Rather, each
"instrument, article, or substance" must be considered in
the circumstances of each case to determine whether it was
"readily capable of being used to produce death or serious
bodily injury." This means that no item is a weapon as a
matter of law and therefore an item cannot be a weapon in an
individual case unless and until a jury has determined that
question. If a judge were to tell a jury that the item
alleged to be a "weapon," was a weapon as a matter of law,
he would usurp the jury function and deprive defendant of
his right to have a jury decide that question--an essential
and the key element of the crime.

-74-

I therefore doubt that it would ever be proper to charge a defendant with negligent assault with a weapon where the alleged weapon is an automobile. Defendant should never be convicted of a charge of negligent assault with a weapon unless it is at least proved that he knew the item he was using was a weapon. In the case of an automobile, an automobile could not be used as a weapon unless its use was deliberately changed from its primary function to that of an illegal function--a weapon. That is not negligence, it is an intentional act.

While I can see a defendant being convicted of negligent assault with a weapon--with the automobile as a weapon--a conviction could only arise under section 45-2-102, MCA, supra, which states that one cannot avoid responsibility for an act which is criminally negligent if it is proved that he purposely or knowingly committed the act. The essential proof would be that defendant intentionally used his car as a weapon. I would hold, therefore, as a matter of law, that defendant could not be convicted of negligent assault with a weapon unless it was proved he was aware he was using his automobile as a weapon.

Under the facts here the defendant could not be convicted of negligent assault with a weapon unless the State proved he used his automobile as a weapon. That proof is demonstrably lacking. Criminal negligence in driving an automobile hardly supplies that proof.

For the reasons stated, the negligent assault conviction must be reversed and the case ordered dismissed.

PART IX.    THE CONSECUTIVE SENTENCE IS ILLEGAL.

Defendant was sentenced to the maximum 20 years in prison for conduct that had never before been considered to be an aggravated assault or even a simple assault in this state.  If, since 1973, all persons in a similar situation as defendant, had been prosecuted and sentenced as defendant was, I have no doubt that we would need 10 new prisons to hold all the inmates.  Ironically, had the person named in count I as the assault victim, died as a result of her injuries, probably defendant would have been prosecuted for negligent homicide, and upon a conviction, could have been sentenced to a maximum of 10 years in prison.  Section 45-5-104, MCA.  The result reached in this case, both the conviction and the sentence, is hardly fair, and is hardly one contemplated by the legislature.  The State has proved nothing more than criminal negligence, and yet defendant has been sentenced as though he deliberately drove his car into the Francisco pickup.

Although it is not normally the function of this Court to review sentences imposed by the district courts (that is the function of the Sentence Review Board), I am compelled to state that the sentence imposed here is a manifest abuse of judicial discretion.  I can only hope and assume that the defendant will place his case before the Board.  Perhaps that Board will also see the blatant unfairness of the conviction and of the sentence imposed as a result of that conviction.

The trial court  heaped insult upon injury by sentencing defendant to a maximum 6 months for the count II lesser-included assault conviction, and by ordering that this six month sentence be served in prison consecutively to service

-76-

of the 20 year felony assault conviction. The trial court overstepped its bounds. The 6 month prison sentence is illegal. The penalty for misdemeanor assault is set out in section 45-5-201(2), MCA, which provides that "a person convicted of assault shall be fined not to exceed $500 or be imprisoned in the county jail for any term not to exceed 6 months, or both." (Emphasis added.) This statute expressly provides for imprisonment to be in the county jail, and the sentence of imprisonment in the state prison, to be served consecutively to the 20 year prison sentence, is invalid. I emphasize that I express no opinion as to whether a misdemeanor jail sentence can be made to run consecutive to the serving of a felony prison sentence.

I do not know what effect this illegal sentence will have on defendant's prison sentence. If the prison officials disregard the 6 month prison sentence, it will probably mean that defendant must only be concerned with the 20 year prison sentence insofar as he may become eligible for parole. On the other hand, if the 6 month prison sentence is figured in with the 20 year sentence, as regulations require, it will mean that defendant must spend more time in prison before he is eligible for parole.

An administrative regulation applicable to service of prison terms, indicates the 6 month sentence will be stacked on the 20 year sentence for purposes of determining defendant's parole eligibility. A.R.M. 20.25.304, Additional or Consecutive Sentences, provides:

> "(1) If the inmate is received with two or more sentences running consecutively, the sentences will be combined automatically for parole consideration purposes, unless the court directs otherwise."

-77-

The sentencing court, of course, did not direct otherwise, and, unless the 6 month prison sentence is invalidated, the defendant must serve a longer time in prison before he is eligible for parole.

The consecutive sentence is improper for yet another reason. Because the trial court gave no reasons for imposing the consecutive sentence, he abused his discretion and the sentences must be ordered to run concurrently.

The only statute in this state having some bearing on consecutive sentences, does so only in an indirect way. Section 46-18-401(4), MCA, states that "[s]eparate sentences of two or more offenses shall run concurrently unless the court otherwise orders." The trial court did otherwise order; but, in doing so, gave no reasons for imposing the consecutive sentence. That is an abuse of discretion. In People v. Edwards (1979), 598 P.2d 126, 130, the Colorado Supreme Court, in setting aside a consecutive sentence, stated: "Since the record fails to support the trial courts apparent conclusion that the defendant is beyond hope of rehabilitation and fails to set out any facts justifying imposition of a consecutive sentence, we hold that the aspect of the sentence constituted an abuse of discretion." (Emphasis added.) And, in State v. Garcia (1980), 288 Or. 413, 605 P.2d 671, the Oregon Supreme Court stated that imposition of a consecutive sentence should require the affirmative action of the sentencing court. The court should be authorized to impose a consecutive sentence only after finding that confinement for such a term is necessary to protect the public from further criminal conduct by the defendant.

The American Bar Association has flatly declared "consecutive sentences are rarely appropriate." American Bar

-78-

Association Standards Relating to Sentencing Alternatives
and Procedures § 3.4 (Approved Draft, 1968). The consecutive
sentences can hardly be appropriate here where both sentences
are based on one act and one state of mind accompanying that
act. Although the convictions involved here cannot be neatly
packaged into a double jeopardy violation, the sentences
smack of double jeopardy. Defendant is being twice punished
for one act--an act devoid of criminal intent--an act which
can at most be characterized as criminal negligence. Under
the single transaction theory of double jeopardy, defendant
should not have received a consecutive sentence for the
misdemeanor assault conviction. Defendant did not deliberately
drive into the Francisco pickup and he did not know how many
occupants were in the pickup.

The sentences imposed are manifestly unfair. The
sentences imposed are simply an extension of defendant's trial:
a trial so stripped of fundamental fairness that it can only
be classified as a farce.

PART X.  CONCLUSION.

This is a classic case of over-prosecution.  Defendant was charged with DWI in Justice Court--driving while under the influence of alcohol.  He pled guilty to that charge before trial occurred on the assault charges.  Defendant was charged with leaving the scene of an accident, and he pled guilty to that charge in District Court before he went to trial on the assault charges.  And defendant was charged in Justice Court with driving without a valid driver's license. The record does not disclose what happened to that charge. And finally, the State charged defendant with two counts of aggravated assault.  The likelihood is that defendant was uninsured, although that does not appear in the record. Could it be that because defendant was driving without a valid license and without insurance coverage that the prosecutor decided to throw the book at him, including two counts of aggravated assault?  The decision to charge defendant with aggravated assault was a manifest abuse of prosecutorial power.

The assault convictions are examples of what can happen when a trial court lets a prosecutor torture the law, and when the trial court effectively becomes an accomplice to an abuse of prosecutorial power by failing to scrutinize the law which forms the basis of the prosecution.  While the trial court should never have let the prosecutor get away with filing aggravated assault charges against defendant, it is indeed unfortunate that this Court failed to perceive the glaring injustice caused by prosecutorial overreaching.  In Parts III through IX of this dissent I have set out what I believe to be a basis for even the most conservative court to be moved to reverse.

-80-

An organized and widespread movement exists in this state to crack down on drunk drivers, and that goal is a laudable one. The tragedy of the results of drunk driving cannot be measured. Nonetheless, the injustice perpetrated here is an example of what can happen when well-meaning but misguided efforts are made to prosecute to the fullest extent possible. Laws are extended beyond the breaking point and the duty of the legal system to give a fair trial to everyone accused of a crime is somehow cast aside in the effort to get at those who abuse their driving privileges by their drunk driving.

Alcohol is this society's legal--and lethal--drug. Its use is condoned, encouraged, and yes, even expected. Drunk driving, in the long run, will not be appreciably diminished until society takes another look at the dynamics of alcohol consumption. This is not to say, however, that the legislature should not take action to express through legislation that one who drunkenly drives his car into another car and injures its occupants, must expect penalties more severe than simply those flowing from a drunk driving charge. If the legislature wants to enact a criminal negligence law with severe penalties for those who injure other users of the highways by their criminally negligent driving, it certainly has that perogative. But until the legislature enacts that legislation, the courts have no obligation to torture the assault statutes so that the state can reach that objective without the benefit of legislation. Rather, it is the obligation of the courts to see to it that the laws are not abused and misused by overzealous prosecutors who are bending to the cries of the public for retribution against drunk drivers. It may be good politics for the prosecutors and the trial courts to so torture the assault

-81-

statutes, but that approach is hardly advancing the law. Finally, this Court is the last bastion against prosecutorial abuse of penal statutes.

The appellate review has only superficially covered the issues which, unfortunately, have only been superficially raised and argued. The injustice perpetrated by the justice system in this case is not only clear and convincing, it is clear beyond a reasonable doubt. The blame lies not with the legislature and not with the jury. Rather, it lies with the prosecutor, with the trial court, and finally, because the buck stops here--with this Court. We have failed miserably.

Justice requires that both the aggravated assault conviction and the misdemeanor assault conviction be reversed and that the charges be dismissed.

_____
Justice

I concur in the dissent of Justice Shea:

_____
Justice